**In re Edward W. SCHNABEL, Debtor.**

**Bankruptcy No. 92 B 17901.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 23, 1993.

---

Terri M. Long, Sherman & Sherman, Chicago, IL, for plaintiff.

Jeffrey P. White, Barrington, IL, for debtor/defendant.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This case comes before the Court on hearing for confirmation of the Debtor's chapter 13 plan. The standing trustee and an unsecured creditor have objected and the Court must decide whether the Debtor's exempt income, his non-debtor wife's exempt income, the Debtor's claimed business expenses, and the Debtor's proposed car payments should be included in calculating "disposable income" under 11 U.S.C. § 1325(b)(2). For the reasons stated below, the Court holds that the Debtor's disposable income includes: all of the Debtor's income, including social security and pension payments, his non-debtor wife's social security payments, $410.00 per month that the Debtor has allocated for business ex-

penses, and car payments above the monthly installments set forth in the original loan documents.

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157, and Local District Court Rule 2.33. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (L). Unless otherwise stated, all statutory references herein shall be to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"). This opinion serves as the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### FACTS

Edward W. Schnabel (the "Debtor") filed a Chapter 13 petition on August 11, 1992. The Court held confirmation hearings for the Debtor's plan on December 1, 1992, and February 4, 1993. Michael W. Lescher, an unsecured creditor (the "Creditor"), objected to the plan, alleging that it did not comply with the good faith requirements of § 1325(a)(3) or the disposable income requirement of § 1325(b). The standing Chapter 13 trustee (the "Trustee") joined in the Creditor's objection.

The Debtor testified to undisputed facts. On June 30, 1992, a judgment was entered in state court against the Debtor in favor of the Creditor for breach of contract in the amount of $35,273.26. Prompted by the Creditor's attempt to collect on the judgment, the Debtor filed a Chapter 13 petition. He had previously received a Chapter 7 discharge in August, 1987.

The Debtor testified that he is retired and that he and his non-filing wife have a combined monthly income of $3,587.00, comprised solely of pension and social security benefits. The Debtor receives pension payments in the amount of $2,504.00 per month and social security payments in the amount of $743.00 per month; his wife receives social security payments in the amount of $340.00 per month.

The Debtor's amended budget includes a $410–per-month business expense. The Debtor testified that this expense reflects the operating costs of a real estate development business, incorporated under Illinois law, which he began two-and-a-half years ago. He is attempting to act as a promoter, packaging real estate developments to be funded by others. The Debtor testified that the $410 includes rent, transportation and entertainment for clients. The monthly rent for office space is $125. The Debtor failed to substantiate the remaining $285. He cited only a few recent occasions when he entertained individuals for business purposes; and was unable to either cite recent travel beyond his immediate vicinity or explain how the travel expense included in the $410 was not separately included in his $150 transportation expense.

The Debtor testified that his business has not produced income of any kind since its inception. Although he has located sites to build villas, made some telephone calls and produced some brochures, he has not been successful in acquiring financing. The banks he has approached would not provide financing because the Debtor could not meet their requirement of 20 to 30 percent equity investment. He has begun speaking with insurance companies that he believes may provide funding as early as next year without any equity from him. He testified, however, that he has not included any future business income on his schedules, and that he does not expect to make plan payments out of income to be realized from his business.

The Debtor proposes to fund a 36–month plan with payments of $714.00 per month until September, 1993, and $939.00 per month thereafter. Unsecured creditors would receive 39% of their allowed claims. Before paying the unsecured creditors, the Debtor would pay in full the following claims: administrative costs, Chrysler Credit Corporation ("Chrysler") in the amount of $460.00 per month (reflecting double payments), and a priority tax claim in the amount of $1,784.00.

The Creditor and the Trustee object that the Debtor is not "engaged in a business," under § 1325(b)(2), so that any of the Debtor's funds allocated for business expenses must be paid into the plan as disposable income; and that proposed payments to Chrysler are double the contract rate, de-

priving the unsecured creditors of additional disposable income. The Creditor raises the additional concern that, while the Debtor is currently ineligible for a Chapter 7 discharge, he will soon become eligible, before any significant (if any) payments to unsecured creditors would have been made. He accuses the Debtor of filing his plan in bad faith, in contravention of § 1325(a)(3), as an attempt to pay only a negligible portion of his claim.

The Trustee further asserts that 735 ILCS 5/12–1006 exempts income traceable to a pension plan only to the extent that it is necessary for the support of the Debtor and his family; and that, under 735 ILCS 5/12–1001 the social security income of the Debtor and his wife is only exempt to the extent that it is used for personal rather than business purposes.

The Debtor has claimed all of his income as exempt under 735 ILCS 5/12–1001 AND 735 ILCS 5/12–1006. He relies solely on § 522 of the Code and the Illinois exemption provisions, rather than on any spendthrift provisions of the pension plan. He argues that because all income under the plan is exempt it is not property of the estate, and only represents disposable income to the extent he voluntarily contributes it to the plan. In other words, the unsecured creditors should be happy to receive whatever he chooses to give them because in a Chapter 7 liquidation, by reason of § 522, they would receive nothing.

Finally, the Debtor asserts that even if the Court should find that his social security and pension payments are disposable income, at least his wife's social security payments should be excluded from the plan.

## DISCUSSION

■ The Debtor raises as a threshold matter that exempt property is not property of the estate, calling into question the Court's jurisdiction to rule on its inclusion in "disposable income." Exemptions, however, only affect property that is initially property of the estate. *See* 11 U.S.C. §§ 522, 541 and 1306; *Owen v. Owen*, —— U.S. ——, ——, 111 S.Ct. 1833, 1835, 114

L.Ed.2d 350 (1991); *Matter of Geise*, 992 F.2d 651, 654 (7th Cir.1993). Therefore, under its grant of jurisdiction, the Court may consider the nature of exempt property when deciding whether to confirm the Debtor's plan. *In re Cordes*, 147 B.R. 498, 505 (Bkrtcy.D.Minn.1992).

■ The Debtor has not introduced evidence that his pension benefits qualify for exclusion under § 541(c)(2), so he may not seek to have them excluded on that basis. *See Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) ("applicable nonbankruptcy law" under § .541(c)(2) is not limited to state spendthrift trusts and includes interests in pensions qualified under the Employee Retirement Income Security Act of 1972 ("ERISA")). Knowing of no other basis for exclusion, the Court finds that the Debtor's income is property of the estate, and therefore, properly before the Court in these confirmation proceedings. *See* 28 U.S.C. §§ 157(b)(2)(A), (B) and (L).

■ It should be noted at the outset that the issue before the Court is not whether the Debtor is required to include "exempt" income in order to meet the "disposable income" test where he intends to fund the plan with non-exempt sources. This Debtor's plan uses only exempt income that he has voluntarily submitted for payment of his creditors. Under § 522 a debtor may elect to claim those exemptions permitted by law. Section 1322(b)(8) allows a debtor to "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." "Property of the debtor" includes property of the estate exempt under § 522. *See* 5 L. King, *Collier on Bankruptcy*, ¶ 1322.12 n. 3 (15th ed. 1992). Section 1322(b)(8), therefore, allows the Debtor to satisfy claims by voluntarily contributing exempt income to the plan. *See In re Tomasso*, 98 B.R. 513, 515 (Bkrtcy.S.D.Cal. 1989). Such contribution constitutes an election not to claim the exemptions. To the extent that he has done so, he himself has subjected his exempt income to the control of the Court, and, in effect, re-

moved its exempt status. *See In re Craig,* 15 B.R. 712, 715 (1981).

Nonetheless, the Debtor has not voluntarily contributed those portions of his income (i.e. business expenses and car payments) that prompted the objections, necessitating the ensuing discussion.

## I. EXEMPTIONS

■ The Trustee objects to the Debtor's claimed exemptions under § 522 of the Code and the Illinois exemption statutes. Under § 522(b)(1), unless a state has "opted out" of the federal exemption scheme, a debtor may choose either the exemptions listed in § 522(d) or applicable state and federal exemptions other than those listed in § 522(d). Since Illinois opted out of the federal scheme (*see* 735 ILCS 5/12–1201), the Debtor is limited to exemptions allowed under Illinois law. *See In re Templeton,* 146 B.R. 757, 759 (Bkrtcy.N.D.Ill.1992); *In re Marriage of Logston,* 103 Ill.2d 266, 281, 82 Ill.Dec. 633, 639, 469 N.E.2d 167, 173 (1984). Under Bankruptcy Rule 4003(c), the Trustee bears the burden of showing that the Debtor's exemptions are not valid.

■ The Court finds that the Debtor's claimed exemption for social security payments is valid to the extent used for personal purposes. The exemption does not apply to the extent used for business purposes.[1] "Business purposes" under the Illinois Statute is not the same as "engaged in business" under § 1325(b)(2). Due to the court's disposition of the issues under § 1325(b) there is no need to attempt to separately allocate which portion of the funds under social security constitutes a business or personal use.

As to the pension payments, § 5/12–1006(a) provides:

§ 12–1006. Exemption for retirement plans. (a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended. 735 ILCS 5/12–1006(a) (1992).

■ The Trustee objects that the Debtor's exemption under paragraph 12–1006 is limited to the amount necessary for support. Paragraph 12–1006 became effective on August 30, 1989, by the enactment of Public Act 86–393, and was amended, effective January 1, 1991, by Public Act 86–1329, replacing paragraph 12–1001(g)(5). Paragraph 12–1001(g)(5) provided an exemption for "a payment under any pension plans or contracts, *to the extent necessary for the support of the debtor and any dependent of the debtor ...*" Ill.Rev.Stat. ch. 110, para. 12–1001(g)(5) (1987) (emphasis added). The emphasized language was not carried over to paragraph 12–1006, and the Court will not assume that it was inadvertently misplaced. The clear implication is that the exemptions for pension plan payments are no longer limited to the amounts necessary for support. *See Templeton,* 146 B.R. at 762 (exemptions under paragraph 12–1006 are not limited by dollar amount or other monetary cap). *But see Auto Owners Insurance v. Berkshire,* 225 Ill.App.3d 695, 167 Ill.Dec. 1100, 588 N.E.2d 1230 (1992) (funds traceable from pension payments retain their exempt status only as long as the debtor continues to hold and use the funds for his family's support).

The Court therefore holds that both the social security and pension income are exempt.

## II. DISPOSABLE INCOME

There is no "disposable income" test in either Chapter 7 or Chapter 11. The Chapter 7 approach is to preserve for the debtor those assets allowed under the applicable

---

**1.** 735 ILCS 5/12–1001(g)(1) provides an exemption for the debtor's right to receive a social security benefit ... "that is used for personal rather than business purposes."

exemption laws and distribute the balance to creditors. Chapter 11 allows the debtor to retain all assets and requires a payment plan with a Chapter 7 liquidation base as the minimum. Chapter 13, however, is different. While assets may be claimed exempt, there is superimposed an entirely new floor, below which a confirmable plan may not fall—the § 1325(b) test of total "disposable income."

Notwithstanding the above rulings, the Court finds the exempt status of the Debtor's property immaterial to its confirmation decision. Since the Debtor's plan neither provides for payment in full to holders of allowed unsecured claims, nor applies all of the Debtor's disposable income, projected for the three-year life of the plan, to payments under the plan, as required by § 1325, confirmation is denied.[2]

### (a) Exempt Income

■■■ The parties have cited no case law that has spoken directly on whether the exempt status of the debtor's income enters into the "disposable income" calculation, and the Court has found none. Two bankruptcy courts and one commentator (*see* Note, *The Disposable Income Test: An Attempt Toward Uniformity*, 4 Bankr. Dev.J. 221, 233 n. 86 (1987)) have assumed without analysis that exempt income is excluded from the disposable income equation. The court in *In re Tomasso*, 98 B.R. 513 (Bkrtcy.S.D.Cal.1989) held that a personal injury settlement was not disposable income to the extent it was protected by the California exemption statute. Similarly, the court in *In re Red*, 60 B.R. 113

(Bkrtcy.E.D.Tenn.1986) held that the portion of the debtor's tax refund that could be included in her personal property exemption under Tennessee law was not part of the debtor's disposable income. At least one commentator disagrees: "[t]here is no mention of exemptions from income in § 1325(b)(2)," and implies that an exemption is "undone by considering the [otherwise exempt] proceeds [ ] to be income for § 1325(b) purposes." 1 K. Lundin, *Chapter 13 Bankruptcy*, § 5.30 (1992).

The Court's holding is based on fundamental principles of statutory construction, supported by the underlying purpose for the enactment of § 1325(b). The meaning of the Bankruptcy Code is derived primarily from its plain language.[3] Section 1325(b)(2) defines disposable income:

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

As Judge Lundin noted, *supra*, § 1325(b) does not qualify income by reference to its exempt status. Where there is no express limitation in the text, the Debtor bears an "exceptionally heavy" burden of persuading the Court that Congress intended one. *Patterson*, —— U.S. at ——, 112 S.Ct. at 2248, *quoting Union Bank v. Wolas*, —— U.S. ——, ——, 112 S.Ct. 527, 530, 116

---

**2.** Section 1325(b)(1) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

**3.** *Patterson*, —— U.S. at ——, 112 S.Ct. at 2246 ("In our view, the plain language of the Bankruptcy Code [ ] is our determinant."); *Toibb v. Radloff*, —— U.S. ——, ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) ("In our view, the plain language of the Bankruptcy Code disposes of the question before us."); *United States v. Shriver*, 980 F.2d 456, 460 (7th Cir.1992) ("The general rule of statutory interpretation is that one must first look to the language of the statute and assume that its plain meaning 'accurately expresses the legislative purpose.'" quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)).

L.Ed.2d 514 (1991). In *Patterson,* the Supreme Court considered whether "applicable nonbankruptcy law" in § 541(c)(2) referred only to state law. The Court found that "[t]he text contains no limitation on 'applicable nonbankruptcy law' relating to the source of the law," *Patterson,* —— U.S. at ——, 112 S.Ct. at 2246, and refused to impose one. Similarly, without an express or even implicit limitation in § 1325(b)(2) on "income" relating to its exempt status, this Court will not impose one. The Debtor's social security and pension payments are "income [ ] received by the debtor," and, to the extent not reasonably necessary for support, must be devoted to the repayment of unsecured creditors.

The Court's reading of § 1325(b) is consistent with the Seventh Circuit's interpretation of parallel language in § 522(d)(10)(E).[4] It is a settled principle of statutory construction that, unless a contrary purpose is shown, Congress intends for statutory terms to carry the same meaning when they appear in different sections of the same statute. *Id.,* —— U.S. at ——, 112 S.Ct. at 2247; *Morrison–Knudsen Constr. Co. v. Director,* OWCP, 461 U.S. 624, 633, 103 S.Ct. 2045, 2050, 76 L.Ed.2d 194 (1983) ("[A] word is presumed to have the same meaning in all subsections of the same statute"); *cf. Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (holding that "allowed secured claim" has different meanings in Bankruptcy Code sections 506(a) and (d) where it is clear that Congress could not have intended the phrase to carry the same meaning in each of the subsections). Both § 522(d)(10)(E) and § 1325(b)(2) address what assets the debtor may retain to promote a viable "fresh start." Section 522 exempts certain assets from liquidation. Section 1325(b) reserves to the debtor the income necessary for maintenance. The same guiding principles apply to both.

As the Court discussed earlier, § 522(d)(10)(E) does not apply substantively

to the Debtor's exemptions because Illinois has opted out of the federal scheme. The Court also noted that the limitation in § 522(d)(10)(E) is not found in the corresponding Illinois provision (*see* 735 ILCS 5/12–1006). However, the limitation does appear, in nearly identical language, in the definition of disposable income in § 1325(b)(2). While Illinois' opt-out provision may preclude the substantive application of § 522(d)(10)(E) to the present proceedings, the application of its literal interpretation to a parallel provision in the same statute is sound statutory construction.

In *Matter of Kochell,* 732 F.2d 564 (7th Cir.1984), the Seventh Circuit examined the standard to be applied under § 522(d)(10)(E) when it held that some of the funds in a Chapter 7 debtor's pension plans were not reasonably necessary for the support of the debtor and his dependents. Its review of the legislative history revealed:

> the federal exemptions are derived in large part from the Uniform Exemptions Act, promulgated by the Commissioners of Uniform State Laws in 1976. H.R.Rep. No. 595, 95th Cong., 1st Sess. 361, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6317. Section . 6 of the Uniform Exemptions Act defined the phrase "property to the extent reasonably necessary for the support of [the debtor] and his dependents" as "property required to meet the present and anticipated needs of the individual and his dependents as determined ... after consideration of the individual's responsibilities and all of the present and anticipated property and income of the individual, *including that which is exempt."*

*Id.* at 565. (emphasis added) The Uniform Exemptions Act expressly included exempt income in the computation of what was reasonably necessary for the support of the debtor and his dependents. As the primary source of the language adopted by Con-

---

**4.** Section 522(d)(10)(E) provides the bankruptcy law exemption for:

(10) The debtor's right to receive—

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or con-

tract on account of illness, disability, death, age, or length of service, *to the extent reasonably necessary for the support of the debtor and any dependent of the debtor ...*

11 U.S.C. § 522(d)(10)(E) (emphasis added)

gress, this definition is a strong indication of Congressional intent. No reason has been shown why, under basic principles of statutory construction, the same meaning should not be applied to the same language in § 1325(b)(2).

■ The court in *In re Jones*, 55 B.R. 462 (Bkrtcy.D.Minn.1985) relied on the parallel constructions of §§ 522(d)(10)(E) and 1325(b)(2) to adopt a standard for interpreting disposable income. There, the court found that the amounts the debtor budgeted for college and secondary school tuition, food expenses, and house payments were excessive. Although the court's decision did not require a determination that exempt income was disposable income, its rationale for adopting the "reasonably necessary" standard is persuasive:

> Section 522(d)(10)(E) and section 1325(b)(2)(A) are similar in so far as they both provide the opportunity for a debtor to retain certain income for his or her own needs. In doing so, they both limit the extent of this retention to that which is reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. In view of this essential similarity between the two sections, I think the standard to be applied under them should be the same. Furthermore, as I see it, the purpose of Chapter 13 is to provide the maximum recovery to creditors while at the same time leaving the debtor sufficient money to pay for his or her basic living expenses. The "reasonably necessary" standard set out by the court in *In re Taff, supra,* is in accord with my views. Accordingly, I am adopting that standard and applying it to the present matter arising under 11 U.S.C. § 1325(b).

*Jones,* 55 B.R. at 466. *See Matter of Taff,* 10 B.R. 101 (Bkrtcy.D.Conn.1981) ("reasonably necessary standard [of § 522(d)(10)(E)] requires that the court take into account *other income and exempt property* of the debtor") (emphasis added). This Court agrees, and likewise adopts the "reasonably necessary" standard, as set forth by the courts in *Kochell* and *Taff,* for application to § 1325(b)(2). Under this standard the Debtor's exempt income must be included when determining "disposable income."

■ The Debtor's reliance on the exemption statutes is misplaced in the context of Chapter 13 plan confirmation proceedings. The Court does not dispute the Debtor's contention that exemptions apply in both Chapter 7 and Chapter 13. *See* 11 U.S.C. § 103(a). However, their significance is greatly diminished in a Chapter 13, where the fresh start is protected by the debtor's retention of non-disposable income rather than by exempt assets. *See Collier, supra,* ¶ 1300.81. Legislative history indicates that in a liquidation exemptions are meant to "protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." H.R.Rep. No. 95–595, *supra,* at 126, *reprinted in,* 1978 U.S.C.C.A.N. at 5787, 6087. *See also* S.Rep. No. 65, 98th Cong. 1st Sess. 7–8 (1983); *Auto Owners Ins. v. Berkshire,* 225 Ill.App.3d 695, 167 Ill.Dec. 1100, 1103, 588 N.E.2d 1230, 1233 (1992) ("the purpose of the [Illinois] exemption and pension statutes [ ] are to provide support for the debtor and his family and to prevent them from becoming public charges"). A Chapter 13 debtor, on the other hand, may keep all its assets, exempt or not, in return for repayment of creditors out of future income. Where the Debtor is assured of an income sufficient to meet his basic needs, his fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits, especially where, as here, it is those benefits that he proposes to use to fund his plan.

Allowing the Debtor to use his exempt income to attain Chapter 13's broad discharge, without the corollary requirement to use it to pay creditors as much as he is able, would contravene the express purpose of the statute—namely, that the debtor make payments under a plan. "The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extend-

ed period." H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6079. *See also Matter of Smith*, 848 F.2d 813, 816–17 (7th Cir. 1988).

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA"), the Code contained no provisions that expressly compelled the Debtor to pay any more than creditors would have received in a liquidation, if anything:

> Present section 1325 does not require, *it does not even permit*, the court to refuse confirmation of a Chapter 13 composition plan merely because the debtor is able to pay more than the plan proposes. The "best interest" test of subsection 1325(a)(4) alone establishes the *lower limit* to be paid unsecured claim holders, by mandating that the plan propose not less than holders of unsecured claims would receive "if the estate of the debtor were liquidated under Chapter 7."

*Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary*, 97th Cong., 1st and 2d Sess. 201–02 (1981–82). *See also Collier, supra,* ¶ 1325.08 and cases cited therein. Consequently, plans devoting only negligible amounts of the Debtor's disposable income to the repayment of unsecured creditors were confirmed, leading ultimately to the enactment of the Consumer Credit Amendments (Subtitle A of Title III of BAFJA is entitled the "Consumer Credit Amendments").

Congress passed the Consumer Credit Amendments to redress the concern of the consumer credit industry that insolvency laws did not reflect the economic reality of consumer credit. The disparity was summarized as follows:

> In theory, Chapter 13 is consistent with the basic premise upon which consumer credit is granted: The debtor proposes a plan to pay his debts over a period of time and, almost always, out of future income. Chapter 13 proceedings thus look to future income—the very asset upon which credit is granted in the first

place—as a source for repayment of debt. The committee believes that Chapter 13 should therefore be consistent with the income-based approach to consumer credit.

S.Rep. No. 65, 98th Cong. 1st Sess. 20 (1983). Allowing debtors with exempt income to exclude it from the amount they are required to pay under a Chapter 13 plan would thwart the legislative intent that consumer lenders be able to look to the debtor's future income as a basis for consumer loans. To hold otherwise would inhibit the extension, or increase the cost, of consumer credit, undermining the amendments.

### (b) Non-debtor Spouse's Income

 The Debtor maintains that even if his social security and pension payments comprise disposable income, his non-debtor wife's social security payments should not. He nonetheless includes her share of expenses as part of his overall living expenses. Such a proposal in effect suggests that the Debtor's creditors subsidize his wife's living expenses—a result not contemplated by the statute. *See In re Belt*, 106 B.R. 553, 562 (Bkrtcy.N.D.Ind.1989). Most courts take into account the non-debtor spouse's income and expenses. *See* Lundin, *supra,* § 5.32; *see, e.g., Belt; Matter of Saunders*, 60 B.R. 187 (Bkrtcy.N.D.Ohio 1986). Similarly, courts have included the non-filing spouse's income when determining whether a case should be dismissed under § 707(b), *Matter of Strong*, 84 B.R. 541, 543 (Bkrtcy.N.D.Ind.1988), and whether a debtor's student loan should be discharged due to undue hardship, *In re Bagley*, 4 B.R. 248, 249 (Bkrtcy.D.Ariz.1980). The Court finds that this non-debtor wife's income also must be included. It would be unfair and unjust, in a joint household, to conclude otherwise.

### (c) Business Expenses

 The Creditor and the Trustee assert that the Debtor's real estate development aspirations do not constitute a "business" under § 1325. Section 1325(b)(2)(B) excludes income of the debtor that is rea-

sonably necessary for business expenses, if the debtor is "engaged in business." If the debtor is not engaged in business, the $410.00 per month that the Debtor has allocated for business expenses must be included in disposable income. "[T]he creditor has the initial burden of production on an objection to confirmation pursuant to section 1325(b). Once that burden is met, the ultimate burden of persuasion rests with the debtor." *In re Navarro*, 83 B.R. 348, 355 (Bkrtcy.E.D.Pa.1988); *accord, Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1226 (8th Cir.1987). Therefore, the Debtor bears the burden of proving a "business."

Section 1304 is entitled "Debtor engaged in business." Subsection (a) thereunder provides, "[a] debtor that is self-employed and incurs trade credit *in the production of income* from such employment is engaged in business." (emphasis added) For the purposes of this discussion the Court will not distinguish between the Debtor and his corporate business entity. The Debtor has testified that the business has never produced income of any kind. Furthermore, he does not anticipate any future business income during the life of the plan. In short, he has failed to make any showing that would enable the Court to find he is "engaged in business" under §§ 1304 and 1325. Moreover, other than $125.00 per month office rent, he has not substantiated the expenses, testifying to only a few isolated entertainment costs. The Court finds that the Debtor's venture is a hobby more than a business and will not allow a hobby to be used as a basis for withholding payments from creditors. Therefore, the $410.00 allocated to business expenses is disposable income.

### (d) Car Payments

 The Creditor objects that the proposed $460.00 per month payment to Chrysler is excessive and not reasonably required for support. The proposed accelerated payment doubles the original installment. The Debtor's plan would allow him to build equity in his car at an unreasonable rate, not required in the terms of his contract, at the expense of his unsecured

creditors. Simply, increased voluntary payments are not "reasonably necessary" under § 1325(b)(2). *Cf. In re Cordes*, 147 B.R. 498, 505 (Bkrtcy.D.Minn.1992) (plan proposing to pay off recreational boat and trailer was not proposed in good faith). Many courts have analyzed this issue, relying in varying degrees on §§ 1325(a)(3) and 1325(b)(1), to reach the same conclusion: "debtors were not properly invoking Chapter 13 remedies when they proposed to subordinate unsecured creditors' rights to the time-purchase of specific assets which were not essential to a 'fresh start.'" *Id.* at 501. (citations omitted)

The Debtor's fresh start may require payments on his 1989 Chrysler LeBaron convertible, but it does not require accelerated payments for his personal benefit at the expense of creditors. In this district, monthly payments of $472.00 for a 1988 Chevrolet Blazer were held not reasonably necessary for the debtor's support. *In re Reyes*, 106 B.R. 155 (Bkrtcy.N.D.Ill.1989). The court found the car to be an "obvious overindulgence" when the debtor could have bought another new car for half the price of the Blazer, or a reliable used car for substantially less. *Id.* at 158. Without characterizing the Debtor's Chrysler as an obvious overindulgence, suffice it to say that in an area where the courts have required circumspection, the Debtor has shown none. By proposing monthly payments of $460.00 on a contract rate of $272.00, the Debtor seeks to "defer, reduce, or even deny a return to other creditors on their [ ] claims, by diverting estate resources to nonessential purposes. This impermissibly tips the balance far over to the debtor's side. Such a plan grants a windfall to the debtor enriching him at creditors' expense ..." *Cordes*, 147 B.R. at 505. Accordingly, the $188.00 per month excess must be paid to the unsecured creditors.

### III. GOOD FAITH

 The Creditor and Trustee assert that the plan's configuration of debt repayment indicates a "bad faith" filing. Section 1325(a)(3) requires in pertinent part

that "the plan has been proposed in good faith and not by any means forbidden by law." Since the enactment of BAFJA, courts need no longer consider the amount of plan payments as part of the good faith analysis. *Belt*, 106 B.R. at 570. Instead, on appropriate objection, courts ensure that proposed payments meet the disposable income requirements described and applied above. *Smith*, 848 F.2d at 820.

In *Smith*, the State of Indiana, an unsecured judgment creditor, objected to confirmation on good faith grounds, claiming, much like the Creditor herein, that the debtor filed his petition less than 100 days after it had obtained its judgment solely to avoid its judgment, that it was the largest unsecured creditor, and that it would receive less than two percent of its claim under the plan. Without deciding whether the debtor's plan should have been confirmed, the Seventh Circuit applied an updated "totality of the circumstances" test previously set forth in *In re Rimgale*, 669 F.2d 426, 432–33 (7th Cir.1982). The *Smith* court affirmed the validity of most of the factors it had previously included in the test, but eliminated factors pertaining to the amount of repayment, explaining that such factors are now properly addressed in the disposable income test.

The *Smith* court looked at whether the plan accurately recounted the secured and unsecured debts, the expenses, and the percentage of repayment of unsecured claims, whether any inaccuracies in the plan indicated an attempt to mislead the court, and whether the proposed payments indicated a "fundamental fairness in dealing with one's creditors." *Smith*, 848 F.2d at 817, *quoting In re Beaver*, 2 B.R. 337, 340 (Bkrtcy. S.D.Cal.1980). Additional factors, invoked in consideration of the plan's "fundamental fairness," included the timing of the bankruptcy filing, the percentage of the total unsecured debt owed to an objecting creditor and the equities of classifying certain unsecured debts together. *Id.* The court also considered the "debtor's motive in seeking Chapter 13 relief" and the "circumstances under which the debts were incurred." *Id.* at 818.

The facts in *Smith* are similar to the ones before the Court. In *Smith* the debtor filed his petition within 100 days of judgment; here, the Debtor filed within 45 days. In both cases, the objecting creditor holds a substantial portion of the unsecured debt. In *Smith*, the objecting creditor was to be paid two percent of its claim. Here, the Creditor raises the concern that if the Debtor files a Chapter 7 plan when it becomes eligible, it will likewise be paid a negligible amount of its claim, if anything.

*Smith* found that filing for bankruptcy soon after the entry of a judgment may indicate a "debtor's desire to use bankruptcy procedures to avoid paying a debt rather than for rehabilitation," *Id.* at 821, *quoting In re Todd*, 65 B.R. 249, 255 (Bkrtcy. N.D.Ill.1986) and that the percentage of the total unsecured debt owed to the objecting creditor was significant. Nonetheless, it refrained from "express[ing] an opinion on whether [the debtor's] plan should be confirmed." *Id.* at 822. It suggested that the better course might have been to separate the objecting creditor into a separate class or offer it a higher recovery. *Id.* *But see In re Chapman*, 146 B.R. 411 (Bkrtcy. N.D.Ill.1992) (separately classifying nondischargeable student loan obligee would unfairly discriminate against holders of general unsecured claims).

While the Bankruptcy Court is in the best position to apply the "totality of the circumstances" test to determine whether a Chapter 13 plan has been filed in bad faith (*see Smith*, 848 F.2d at 822), the Seventh Circuit's reluctance to find bad faith under facts substantially similar to the ones at bar is persuasive. *See also Collier, supra*, ¶ 1325.04[3] ("Only where there has been a showing of serious debtor misconduct or abuse should a Chapter 13 plan be found lacking in good faith"). Furthermore, due to the lack of clear *stare decisis* in this area, the attempt by the Debtor to withhold exempt income from the plan should not be deemed bad faith. Legal creativity, when applied in good faith, should not be stifled. *See In re KTMA Acquisition Corp.*, 153 B.R. 238, 250 (Bkrtcy.D.Minn.1993) (Rule 9011 not

intended to chill creative legal theories). Chapter 13 plans may be aggressive without constituting bad faith. Therefore, the Court finds that the Debtor's conduct has not risen to the level of bad faith.[5]

 The Creditor also objects to the proposed plan payment of priority tax debt before any payment is made to unsecured creditors as a bad faith provision. Under § 1322(a)(2), the plan must provide for payment in full of all unsecured priority claims. *See In re Bates,* 974 F.2d 1234, 1236 (10th Cir.1992). While under § 1322(b)(4) a plan may provide for payment of priority claims concurrently with general unsecured claims, there is no requirement for concurrent payment. *See In re Parker,* 15 B.R. 980, 983 (Bkrtcy. E.D.Tenn.1981). The Court therefore overrules this objection that the Debtor's plan was filed in bad faith.

## CONCLUSION

For the reasons stated, the objections to the Debtor's exemptions and to confirmation based on § 1325(a)(3) are overruled, and the objections to confirmation based on § 1325(b)(2) are sustained.

Ronald F. Grossman, Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Chicago, IL, for debtor/defendant.

Michael J. Davis, Katz, Randall & Weinberg, Chicago, IL, for plaintiff.

---

**5.** The question of good faith in a projected future chapter 7 filing is not presently before the Court. The ability of the debtor to make substantial payments to creditors out of future income in the context of a Chapter 7 has been held to be sufficient cause for dismissal under § 707(b). *See Fonder v. U.S.,* 974 F.2d 996, 999 (8th Cir.1992); *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989); *In re Kelly,* 841 F.2d 908, 914 (9th Cir.1988).