**In re Ralph J. and Dorothy K. MORSE, Debtors.**

**Bankruptcy No. 93–01845–R5E.**

United States Bankruptcy Court, E.D. Washington.

March 4, 1994.

Gary T. Farrell, Office of the U.S. Trustee, Spokane, WA, for U.S. Trustee.

William J. Smith, Wenatchee, WA, for Ralph J. and Dorothy K. Morse.

## MEMORANDUM OPINION

JOHN A. ROSSMEISSL, Bankruptcy Judge:

### JURISDICTION

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11) and 28 U.S.C. § 1334(d) (the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district), and

---

Local Rule 29 of the United States District Court for the Eastern District of Washington (referring all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to cases under Title 11 to the bankruptcy judges of this district). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## FACTS

Ralph and Dorothy Morse ("Debtors") filed for chapter 7 protection on July 6, 1993. Debtors schedules listed total assets of $935.05 and total debts of $56,752.45, with the debts being entirely unsecured. Of the debts, $32,388.30 are credit card charges, $7,364.17 are for medical expenses, and $17,000 is listed as a repossession deficiency. Their Schedule I listed three sources of income: Mr. Morse's social security, his "U.S. Army Pension", and his "Military Pension".[1] These sources generated a total monthly income of $2,864.38 which the Morses claimed as entirely exempt under § 522(b)(1) on their Schedule C.[2] Debtors' Schedule J listed total monthly expenses of $1,126.95, leaving a monthly disposable income of $1,737.43.

The United States Trustee ("UST") filed a motion to dismiss Debtors' case for substantial abuse under Code § 707(b), asserting that they had the capacity to repay 100% of their debts over a 36 month period.[3]

Debtors objected to the UST motion claiming that: 1) they had no disposable income since all their income is attributable to exempt sources and 2) they need all their income for anticipated extraordinary expenses. Debtors then amended both their Schedule J, by increasing their expenses $868.26 for a monthly total of $1,995.21, and their Schedule C, by changing the basis of their exemptions to applicable non-bankruptcy law under § 522(b)(2).[4]

At a January 4, 1994 hearing, Mr. Morse testified that he used the credit cards primarily at the end of a month when Debtors had insufficient funds to cover their living expenses, and that approximately 10% of this use was for medical expenses. Mr. Morse also testified that the repossession deficiency arose from the March 1985 purchase of a 1985 Dodge Van in California, and that he had made the monthly payments for three and a half years. When he could no longer afford the payments he returned the vehicle during July of 1988. He first learned of the claim for deficiency in June of 1993 when someone phoned demanding payment. Mr. Morse had never received a prior demand for payment, nor had he received notice that the repossession deficiency had been reduced to judgment.

When questioned as to their expected future medical bills, Mr. Morse testified that he

---

1. Mr. Morse testified that both the "U.S. Army" and "Military" Pensions arise from his 30 years in the national guard.

2. The Social Security was claimed exempt under § 522(d)(10)(A), the U.S. Army pension was claimed exempt under § 522(d)(10)(B), and the Military pension was claimed exempt under § 522(d)(10)(E).

3. Monthly payments of $1,737.43 could liquidate Debtors obligations in less than 33 months. Liquidating the debt over 36 months would require monthly payments of $1,576.46.

4. Debtor's amended schedule C claimed Mr. Morse's social security exempt under 42 U.S.C. § 407 ("none of the moneys paid or payable or rights existing under this title ... shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law") and his U.S. Army pension exempt under 38 U.S.C. § 5301 ("payments made to, or on account of, a benefi-

ciary shall ... be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process"). He also attempted to claim his Military pension as exempt under 10 U.S.C. § 1331 et. seq., but there is no right of exemption provided for under that chapter.

All three sources of income were also claimed exempt under Washington statute RCW 6.15.020 which provides:

(1) It is the policy of the state of Washington to ensure the well being of its citizens by protecting retirement income to which they are or may become entitled. For that purpose generally and pursuant to the authority granted to the state of Washington under 11 U.S.C. Sec. 522(b)(2), the exemptions in this section relating to retirement benefits are provided.

(2) Unless otherwise provided by federal law, any money received by any citizen of the state of Washington as a pension from the government of the United States, ... shall be exempt from execution, attachment, garnishment, or seizure by or under any legal process whatever....

was in good health and hoped to remain that way, but that Mrs. Morse may have a potential heart condition. Neither of the Debtors could substantiate whether Mrs. Morse's condition persisted or was worsening, nor could they establish a reliable estimate of future medical expenses as Mrs. Morse was still in the process of seeking a diagnosis. Other than her possible heart condition, Mrs. Morse had been hospitalized once, there had been no recurrence of the symptoms for which she had been hospitalized, and she was currently taking medications only for a flu infection and to control a nervous disorder which would result in skin rash.

I took the matter under submission to consider whether exempt income is included in calculating disposable income for purposes of making a substantial abuse determination under Bankruptcy Code § 707(b).

## DISCUSSION

■ Substantial abuse under § 707(b)[5] in the Ninth Circuit is governed by *In re Kelly*, 841 F.2d 908 (9th Cir.1988). Under *Kelly* the court must first determine whether more than half the debts at issue are consumer debt.[6] *Id.* at 913. If that test is met, the court must then determine whether Debtors can fund a Chapter 13 plan as "the debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief would be a substantial abuse." *Id.* at 914. "[A]

finding that a debtor is able to pay his debts, standing alone supports a conclusion of substantial abuse." *Id.* at 915.

More than half of the obligations listed in the Morse's petition are consumer debt. Mr. Morse testified that he used the credit cards to cover their living expenses such as food and gas. Food and gas for personal use are consumer debt. Similarly, the medical debts are personal expenses. Since the credit card debt and the medical expenses comprise 70% of Debtors' scheduled obligations, the UST has established the first element for a § 707(b) determination of substantial abuse.[7]

Turning next to Debtors ability to fund a chapter 13 plan, the UST does not dispute the reasonableness of the Morses claimed expenses. Thus, if Mr. Morse's social security, military pension and army pension are included in calculating disposable income, they would have $869.17 of monthly disposable income. Sixty monthly payments of $869.17 would pay approximately 92% of the creditors claims.[8]

The U.S. Trustee asserts that *Kelly* adopts the disposable income test set forth in § 1325(b)[9] for purposes of a § 707(b) determination, and urges that this court adopt the analysis of *In re Schnabel*, 153 B.R. 809 (Bankr.N.D.Ill.1993) which finds that income from an exempt source is included in calculating a debtor's disposable income.

While *Kelly* does mandate the use of the § 1325(b) disposable income test,[10] the Ninth

---

**5.** Section 707(b) provides:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

**6.** 11 U.S.C. § 101(8) defines consumer debt as "debt incurred by an individual primarily for a personal, family, or household purpose."

**7.** The lack of evidence establishing a business use for the Dodge Van combined with Mr. Morse's continued contract payments after his retirement

suggest that the alleged repossession deficiency is also probably a consumer debt.

**8.** Thirty-six payments of $869.17 over three years would pay off approximately 55% of their debt.

**9.** Section 1325(b)(2) provides:

> For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>     (A) for the maintenance or support of the debtor or a dependent of the debtor; and
>     (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

**10.** As the Ninth Circuit commented when reviewing the trial court's findings on the reasonableness of the debtor's scheduled entertainment expenses:

Circuit has not resolved whether income from exempt sources should be omitted when determining whether a debtor has disposable income available to repay his debts, and *Kelly* does not address this issue. Therefore, the court turns to an examination of *Schnabel.*

In *Schnabel* the debtor filed for chapter 13 protection. 153 B.R. at 812. The debtor's monthly income of $3,587.00 was comprised solely of pension and social security benefits. *Id.* The court found that both the pension and the social security were properly claimed exempt. *Id.* at 814. The debtor proposed a 36 month plan that would pay unsecured creditors 39% of their claims. *Id.* at 812. The chapter 13 trustee objected to the debtor's proposed budget which included a $410 per month business expense deduction for a real estate development business which had generated no income, and a doubling of debtor's monthly auto loan payment. *Id.* The debtor argued that because all his income was exempt, disposable income to fund his plan existed only to the extent of his voluntarily contribution.[11]

The court in *Schnabel* was unpersuaded. Instead, it noted that § 1325(b)(2) contains no express limitation on the type of income to be included when calculating disposable income, and that "[w]here there is no express limitation in the text, the Debtor bears an 'exceptionally heavy' burden of persuading the Court that Congress intended one." *Id.* at 815 (citing *Patterson v. Shumate,* —— U.S. ——, ——, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519). The court then held that,

without an express or even implicit limitation in § 1325(b)(2) on "income" relating to its exempt status, this Court will not impose one. The Debtor's social security and pension payments are "income [ ] received by the debtor," and, to the extent not reasonably necessary for support, must be devoted to the repayment of unsecured creditors.

*Id.* at 816.

In further support, court noted that, "unless a contrary purpose is shown, Congress intends for statutory terms to carry the same meaning when they appear in different sections of the same statute," and reasoned that its reading of the phrase "reasonably necessary ... for the maintenance or support of the debtor or a dependent of the debtor" in § 1325(b) was consistent with the Seventh Circuit's reading of parallel language in § 522(d)(10)(E)[12] in *Matter of Kochell,* 732 F.2d 564 (7th Cir.1984). *Id.*

In *Kochell* the Seventh Circuit reviewed the legislative history of the federal exemptions in the Bankruptcy Code when considering the scope of the "reasonably necessary for support" standard for exempting pensions from an estate under § 522(d)(10)(E). The Seventh Circuit noted that,

the federal exemptions are derived in large part from the Uniform Exemptions Act, ... Section 6 of the Uniform Exemptions Act defined the phrase "property to the extent reasonably necessary for the support of [the debtor] and his dependents" as

---

11. To which the court commented, "[i]n other words, the unsecured creditors should be happy to receive whatever he chooses to give them because in a Chapter 7 liquidation, by reason of § 522, they would receive nothing." 153 B.R. at 813.

12. Section 522(d)(10)(E) provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

....

(10) The debtor's right to receive—

....

(E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor....

The bankruptcy judge was, if anything unduly generous in this regard. The sole support for the $500 figure was Kelly's explanation that this was for "going out to dinner, entertaining people[,] ... buying toys for the kids or going to the movies, that sort of thing." ER at 82. None of these items qualify as "reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor," 11 U.S.C. § 1325(b)(2)(A) (Supp. III 1985), and thus permitting a debtor to retain this income would be grounds for rejection of a chapter 13 plan. 11 U.S.C. § 1325(b). *The same test is appropriate in determining which of the expenses claimed by the debtor could in reality be devoted to debt servicing for purposes of determining the debtor's ability to repay his debts under section 707(b).*

841 F.2d at 915, fn. 9 (emphasis added).

"property required to meet the present and anticipated needs of the individual and his dependents as determined ... after consideration of the individual's responsibilities and all of the present and anticipated property and income of the individual, *including that which is exempt.*"

732 F.2d at 565 (citations omitted) (emphasis added).

After reviewing *Kochell*, the court in *Schnabel* concluded that,

> [w]here the Debtor is assured of an income sufficient to meet his basic needs, his fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits, especially where, as here, it is those benefits that he proposes to use to fund his plan.

*Id.* at 817.

The analysis in *Schnabel* of § 1325(b)'s disposable income calculation is equally applicable when making a § 707(b) substantial abuse determination. The Ninth Circuit standard for determining substantial abuse is a Debtor's ability to fund a Chapter 13 plan. If a creditor or a trustee objects to a Chapter 13 plan, the court cannot approve such a plan unless it provides that all of a debtor's disposable income goes to fund the plan for a three year period. 11 U.S.C. § 1325(b)(1)(B). Disposable income is defined as "income ... not reasonably necessary to be expended ... for the maintenance or support of the debtor or a dependent of the debtor." Nothing in § 1325 limits "income" to only non-exempt sources. When the statute is unambiguous, the Supreme Court's mandate is clear: absent an express limitation, such a limitation should not be read into statutory text. *See, Patterson v. Shumate*, —— U.S. at ——, 112 S.Ct. at 2246. Therefore, exempt income is included in calculating a debtor's disposable income. The court finds that the Morses currently have at least $869.17 a month of disposable income with which they could fund a chapter 13 plan, and concludes that granting them a chapter 7 discharge at this time would be a substantial abuse.

Debtors argue that *Schnabel* is inapplicable to their situation for three reasons: 1) the debtor's voluntarily funding of the plan from exempt income sources in *Schnabel* effectively waived his claim of exemption; 2) *Schnabel* is a chapter 13 case and the court's inclusion of the exempt income in determining disposable income in *Schnabel* related solely to the policy considerations underlying Chapter 13 which are not relevant to a chapter 7 case, and; 3) the claims of exemption in *Schnabel* were made under Illinois state law as opposed to the Morses claim under Washington and other federal non-bankruptcy law. This court is unpersuaded by these distinctions.

First, the Morses argue that *Schnabel* does not address whether a debtor is required to include income from exempt sources when calculating disposable income because the debtor voluntarily funded his plan from an exempt income source.

While the voluntary funding did waive a portion of the debtor's exemption in *Schnabel*, that waiver was limited to the income committed to fund the plan. The debtor still claimed his remaining income as exempt, and wanted to budget that income for business expenses and double car payments outside the plan. 153 B.R. at 814. The court in *Schnabel* found the income allocated to those expenses was disposable income, and denied confirmation for debtor's failure to commit that income to the plan. 153 B.R. at 815.

Next, Debtors argue that *Schnabel* should be distinguished because it is a case under Chapter 13, not Chapter 7. In their view, Chapters 7 and 13 have separate and distinct provisions for protecting a debtor's fresh start. In Chapter 7, debtors surrender all their non-exempt property in exchange for a discharge. Under this chapter, the debtors opportunity for a fresh start is protected by the exemption provisions which allow them to retain exempt property. In contrast, the opportunity for a fresh start in Chapter 13 is preserved by allowing debtors to retain sufficient income to meet their basic expenses, while devoting their remaining disposable income to payment of their creditors. The Morses argue that these are separate and distinct congressional schemes for protecting a debtor's fresh start, and thus it is improper

to apply the Chapter 13 disposable income criteria in a Chapter 7 setting.

This is a misreading of the statutory scheme underlying the Bankruptcy Code, and particularly § 707(b).

The Bankruptcy Code does not solely protect a debtor's fresh start, but balances the interests of debtors and creditors. The Code is intended to provide an honest but unfortunate debtor with a fresh start, but it is also designed to safeguard creditors interests in obtaining repayment when repayment is not a burden on the debtor. Congressional concern for the balancing of these interests is reflected by the addition to the Code of § 1325(b) and § 707(b) as part of the consumer credit amendments of the Bankruptcy Amendment Act of 1984 in furtherance of the policy to "uphold[] creditors' interests in" obtaining repayment where such repayments would not be a burden" on a debtor. S.Rep. No. 65, 98th Cong., 1st Sess. 43 (1983). In a Chapter 13 a debtor must commit disposable income to a plan for three years in an amount which would provide creditors at least what they would obtain in a Chapter 7. 11 U.S.C. § 1325(a)(4). Upon a creditor's objection a debtor must further commit all income not reasonably necessary for the debtor's maintenance or support for a period of three years. 11 U.S.C. § 1325(b)(1)(B). In cases such as *Schnabel* where all of the debtor's assets are exempt, § 1325(b)(1)(B) provides an alternative basis for determining the minimum required distribution to creditors which will entitle a debtor to a discharge. 153 B.R. at 815. Thus, § 1325(b) balances the interests of debtors and creditors by independently limiting a debtor's ability to shelter income from exempt sources away from his creditors when he otherwise has sufficient income to meet his basic needs. Section 707(b), by incorporating a disposable income test, similarly balances the interests of debtors and creditors by empowering courts to dismiss cases filed by a non-needy debtors for substantial abuse "if a debtor can meet his debts without difficulty as they come due." S.Rep. No. 65, 98th

Cong., 1st Sess. 53, 54 (1983)). Thus, this court perceives no policy justification for excluding a disposable income test as part of a § 707(b) determination.

The Morses final attempt to distinguish *Schnabel* argues that their claims of exemption were made under Washington state or other applicable non-bankruptcy law as opposed to Illinois state law, and this distinguishing fact entitles them to a discharge.[13] This argument again suggests that debtors should have the unfettered ability to claim all their exemptions under Chapter 7, and also receive a discharge without regard to debtors ability to repay their debts. While the court does not dispute that debtors are entitled to any exemption which they may validly claim, the ability to claim an exemption is an independent issue from whether debtors have the ability to repay their debts. The fact that the Morses claim their income exempt under Washington state or other applicable non-bankruptcy law, as opposed to Illinois state law, has no effect on a substantial abuse analysis. "Fundamental maxims of statutory construction require that a specific statutory section qualifies a more general section and will govern, even though the general provisions, standing alone, would encompass the same subject." *Trustees of Amalgamated Insurance Fund v. Geltman Industries, Inc.*, 784 F.2d 926, 930 (9th Cir.1986) (citing *Monte Vista Lodge v. Guardian Life Ins. Co. of America*, 384 F.2d 126, 129 (9th Cir.1967). Reading § 707(b) as operating independent of a debtor's general claim of exemptions under § 522 merely follows this fundamental principal of statutory construction. The Morses amended budget reflects that only $1,995.21 per month is reasonably required for their maintenance and support, and as a result they have $869.17 of disposable income. Granting the Morses a discharge here, when there is significant income available to fund a Chapter 13 plan, would be a substantial abuse.

Finally, Debtors argue that the UST's reading of *Kelly* is too narrow: that while

---

**13.** Illinois law apparently exempts pension income only to the extent it is necessary for support. *Schnabel* at 813. The Washington exemption under R.C.W. 6.15.020 and the federal ex-

emptions under 42 U.S.C. § 407 and 38 U.S.C. § 5301 are broader and contain no qualifications as to necessity for support.

*Kelly* holds that the ability to fund a plan alone will support a conclusion of substantial abuse, other factors motivated the Ninth Circuit's decision. Debtors argue that § 707(b) was intended to prevent actual abuse, dishonesty, or other manipulation of the bankruptcy system, and that this court must consider the "totality of the circumstances" when making a determination of substantial abuse.

While the court agrees that *Kelly* does not necessarily mandate a conclusion of substantial abuse if a court finds that a debtor has the ability to fund a plan, a court need not find that a petition has been filed in bad faith in order to dismiss a case under § 707(b). *See, In re Walton*, 866 F.2d 981, 983 (8th Cir.1989). To the extent there are other mitigating or aggravating factors surrounding a debtor's bankruptcy, nothing in *Kelly* would preclude a court from taking those factors into consideration. However, absent any aggravating or mitigating factors, *Kelly* is clear that a debtor's ability to fund a plan will support a conclusion of substantial abuse.

■ Here, the Morses have $869.17 of monthly disposable income available to fund a plan. Although Debtors claim to anticipate increased future medical expenses, Mr. Morse is apparently in good health while Mrs. Morse's condition has yet to be diagnosed. Neither debtor could adequately establish a basis for their expectation of increased future medical expenses. Therefore, I find no mitigating circumstances which would excuse Debtors from a finding of substantial abuse given their ability to fund a plan at this time.

### CONCLUSION

Debtor's income from exempt sources is disposable income to the extent that it is not reasonably necessary for the maintenance or support of the debtor or a dependant of the debtor. Disposable income from exempt sources sufficient to fund a Chapter 13 plan is a sufficient basis to support a dismissal for substantial abuse under § 707(b).

This memorandum opinion shall constitute the findings of fact and conclusions of law pursuant to BR 7052 and BR 9014.

The Court will enter an order consistent with this memorandum opinion.