## SCOTT vs. SHUFELDT.

Where the parties were white persons, and the complainant was charged by the oath of the defendant as the putative father of her bastard child, and the complainant thereupon, believing the child to be his, married her to obtain his discharge from the proceedings against him under the bastardy act, and he subsequently ascertained that the child was a mulatto, and that the defendant knew that fact at the time she swore it to be his, she then having been delivered and seen the child ; *Held*, that the complainant was entitled to a decree declaring the marriage contract void, on the ground that his consent was obtained by fraud.

If a party knowing that he cannot be the father of a bastard child is induced to marry the mother to avoid a prosecution, it is no ground for annulling the marriage contract on the ground of fraud, although he should afterwards be able to establish the fact that the child was not his.

Although it is legally impossible that a white man should have a mulatto child by a white woman, yet if the former, before the birth of the child, believing it to be his child, marries the mother on the ground of such belief, it seems he cannot have a decree annulling the marriage, notwithstanding her concealment of the fact from him that she had received the embraces of a negro about the time she was receiving his.

THE bill in this case was filed for the purpose of annulling a marriage contract, on the ground that the consent of the husband to such marriage was obtained by fraud, force and coercion. The bill alleged that the complainant had occasionally visited the defendant, and that she afterwards made oath before a magistrate that she had been delivered of a bastard child, and that the complainant was the father of such child ; that the complainant was thereupon arrested upon a warrant, and was required to give bail as the putative father of such bastard ; and believing it to be a white child, and being unable to procure bail, he consented to marry the defendant, and was thereupon married to her by the magistrate before whom he was brought on such warrant ; that he subsequently ascertained that the child, of which the defendant had been delivered a few days previous, was a negro child ; the complainant and defendant being both white persons ; and that he had not cohabited with the defendant subsequently to such marriage. The complainant, therefore,

January 6.

prayed that the marriage contract between him and the de-
fendant might be annulled, and declared and decreed to be
void, on account of the fraud, force and coercion, by which
his consent thereto had been obtained. The bill having been
taken as confessed,

*Killian Miller*, for the complainant, now moved for an order
of reference to a master to examine and report as to the truth
of the allegations contained in the complainant's bill, and that
special directions be given to the master on the subject of the
reference.

THE CHANCELLOR. There is nothing in this case which
can authorize the court to declare the marriage contract void
on account of force or coercion. Although the statute au-
thorizes the court to annul a marriage when the consent of
the complainant was obtained by force, it never was intended
to apply to a case where the putative father of a bastard elects
to marry the mother, instead of contesting the fact, sworn to
by her, that he is the father of the child. There is no pre-
tence in this case that the magistrate, who issued the warrant,
upon which the complainant was arrested, was not acting in
good faith. The only ground upon which this bill can be
sustained, therefore, is, that the complainant was defrauded
by the defendant, by her inducing him to suppose he might
be the father of her illegitimate child, when she in fact knew
it was not his, but the child of a negro. If he knew it could
not be his child, there was no fraud as to him, although he
afterwards ascertained that it was the child of a negro, instead
of its being the child of some white person other than himself.
From the allegations in the bill, however, it is probable he
had some reasons to suppose it might be his child, although
he appears to have had doubts on that subject from the be-
ginning. Under such circumstances, if the mother, at the
time she charged him as the putative father, and induced him
to marry her under the supposition that the child might pos-
sibly be his, knew it was not his child, but that it was the child
of a negro, she was not only guilty of perjury, but she also in-
tentionally defrauded the complainant in such a manner as to

authorize this court to declare the marriage contract a nullity.
If the child had not been born at the time of the marriage, the
complainant would have had some difficulty in showing that
he had been intentionally deceived and defrauded by the de-
fendant, as she might possibly have supposed the child to be his,
although she had also had connection with a negro about the
same time.    But if she knew it was a black child at the time
she charged the complainant with being the father thereof,
I am not such a convert to the theory of Dr. Mitchell, suggest-
ed by him in his evidence in *Whistelo's case*, (3 *Wheeler's Cr.
Cas.* 194,) as to believe it possible she did not intend to com-
mit a fraud upon the complainant; by charging him as the
father of this child, when she had the most satisfactory rea-
sons for beliving it could not be his, but that it was in fact the
child of a negro, with whom she must also have had con-
nection.(a)

I shall therefore direct a reference to a master residing in
the county of Columbia, to report as to the truth of the mat-
ters alleged in the complainant's bill.   And particularly, that
the master ascertain and report whether the child of which
the defendant charged the complainant as being the father,
was a negro or mulatto child ; and whether, at the time she
made that charge, and at the time of the marriage, she knew
or had reason to believe it was a negro or mulatto child, and
intentionally concealed that fact from the complainant.   The
master must also ascertain and report whether the parties to
this suit have voluntarily cohabited as husband and wife since
the alleged marriage.   And the master is to report the testi-
mony which he shall take in the case, with his opinion there-
on, without delay : to the end that upon the coming in of
that report, a decree of nullity may be pronounced if the alle-
gation of fraud, in this respect, shall be established by the
proof.

(a) See *Beck's Medical Jurisprudence, 5th edition, vol.* 1, *p.* 485.