KNOXVILLE, SEPTEMBER TERM, 1853.

ROBERT J. MCKINNEY,  
ARCHIBALD W. O. TOTTEN,   } *Judges.*  
ROBERT L. CARUTHERS,

CASTELLAR *v.* SIMMONS AND OTHERS.

### MARRIAGE.

1.  A marriage procured by one of the parties to it for the sole purpose of defrauding the other, is voidable but not void.  (Totten, J. *dissenting*.)

    MARRIAGE, *fraudulent.  Relief against.  Divorce.  Alimony.  Account.*

2.  A. recovered a judgment against B. for breach of promise of marriage; to avoid payment of which, B. transferred his property to C. A. filed a bill in chancery to set aside the fraudulent conveyance, and subject the property to the satisfaction of her judgment against B.  For the secret purpose of defeating this suit, B. proposed marriage to A. who accepted; and immediately after the solemnization of the marriage, B. eloped with a strumpet.  *Held,* that A. before the marriage, being a creditor, could maintain a bill to set aside the fraudulent conveyance, but that by the marriage she became a party to it, and her only relief was divorce and alimony, or an account for the recovery of the unpaid purchase money against the fraudulent vendee.

Castellar v. Simmons.

EVIDENCE.   *Fraudulent conveyance.   Burden of Proof.*
3.   Where there is much in a case to attack a conveyance indirectly and
cast suspicion upon it, the purchaser will be required to show the pay-
ment of the purchase money by clear proof.

The case is stated in the opinion of the Court.

McKinney, J.

The plaintiff recovered
against the defendant a judgment of $1500, for a breach
of promise of marriage.   On the day after the summons was
issued in the suit for breach of promise, the defendant, Sim-
mons transferred his property to his co-defendant, to avoid
the payment of the judgment that might be obtained.
After recovering her judgment, the plaintiff filed a bill in
chancery to set aside this conveyance.   Pending the chan-
cery suit, the defendant Simmons proposed to marry the
plaintiff for the secret purpose of defeating her bill.   The
plaintiff consented, the ceremony was performed, and the
defendant Simmons in ten minutes after eloped with a strum-
pet, and the plaintiff has not seen him since.

Has the Court of Chancery power to annul the marriage ?

In a case at Nashville (1) a creditor filed his bill to annul
a marriage celebrated for the purpose of defrauding him of
his debt.   Relief in his case was refused.   But here we are
called upon by one of the parties to the marriage, to grant
relief against a fraud which the other party has, through
the marriage, perpetrated upon her.

In the opinion of a majority of the court, we are com-
pelled to announce that the marriage cannot be set aside on
this ground.   Misrepresentations as to station, property and
the like, afford no ground of relief against a marriage.

The fraud in this case consists in the secret intention of

(1)   McKinney v. Clark, 2 Swan, 321.

the party to desert the wife. The object was to secure a pecuniary benefit. If this were a ground of relief, the Courts of Chancery would be crowded with applications of this kind. (2)

We are of opinion that the complainant is entitled to relief by divorce and alimony. But in the view we take, the sale, which would be void against a creditor, (and such the plaintiff was until her marriage with the defendant Simmons,) would be valid as against the party himself, and as against the wife by the subsequent marriage, who can only claim under him. In this attitude the plaintiff now finds herself.

The only relief, then, against the property, will be to reach the purchase money so far as it remains unpaid. Though the answer states that the purchase money is paid, there is much in the case to attack it indirectly, and so much suspicion against it, that we will require the purchaser to show the payment by clear proof. Cause remanded for proof on this point. Costs accrued and to accrue to be paid by defendant.          TOTTEN, J., *dissenting.*

(2)  1 Bishop Mar. & Div., 4th Edit., § 167 *et seq.* and citations.

A marriage entered into for the sole purpose of defeating creditors, cannot be set aside at the suit of a creditor. McKinney v. Clark, 2 Swan, 321, 325. See the dictum of McKinney, J., in this case quoted and commented upon in 1 Bishop Mar. & Div. § 177, 4th Edit. But *contra*, Barnes v. Wyethe, 2 Wms. Vt. R. 41, where the marriage was to defraud the public. But see Rex v. Tarant, 1 Botts P. L. 338; S. C. 2 Botts P. L. 68; Rex v. Beimingham, 8 Barn. & Cres. 29; S. C. 2 Man. 1 R. 230. And see Reynolds v. Reynolds, 3 Allen, Mass. 605, where the husband, a boy, was led by fraudulent representations of the wife and her friends to believe that she was chaste and virtuous, whereas she was in fact at the time of the marriage, pregnant by another man. In that case Bigelow, Ch. J. said : " The only general rule which can be safely stated is, that to render a contract void on the ground of fraud, there must be a fraudulent misrepresentation or concealment of some material fact ; "—such a then existing fact, it would seem, as in an ordinary transaction would fall within the statute of false pretenses. And that

case fell entirely within this rule. The fact about which the fraudulent misrepresentation and concealment was made, were in the highest degree material. The wife sought to bring alien blood into the husbands household. The fact that she was pregnant by another man rendered it impossible for her to perform the highest duty of the marriage relation, the bearing of a child to her husband. Had the misrepresentation been made as to wealth, ancestry, family connections, moral habits, or station in life, the rule would not have applied, for by the very nature of the marriage contract, the parties taking each other for better or worse, everything is waived except those things which relate to the two prime objects for which marriage is instituted, the ability to procreate offsprings and to satisfy the animal desire. Wakefield v. Mackey, 1 Phillim. 134; Clowes v. Clowes, 3 Curteis Ec. 185, 191; Evans v, Evans, 1 Haggard Con. R. 35; Ewing v. Wheatley, 2 Id. 175, 182. 183; Benton v. Benton, 1 Day Conn. R. 111; Drane v. Aveling 1 Rob. Ec. 279. But in this case, Dr. Lushington, sitting in the consistory Court of London, said: "Mere incapability of conception is not sufficient ground whereon to found a degree of nullity, and alone so clearly insufficient that it would be a waste of time to discuss an admitted point. The only question is, whether the lady is or is not capable of sexual intercourse: or if incapable, whether that incapacity can be removed." But such incapacity though it might not of itself be sufficient to authorize a decree of nullity, is in Tennessee, good cause for divorce. Code 2448, sub sec. 1. (Act of 1835, ch. 26, sec. 1.)

It might be worth reflecting whether the doctine of *imperfect consent* does not enter to some extent into this case. On the part or the wife, the consent was perfect; but on the part of the husband, it extended only to the preformance of the naked ceremony. Beyond that, everything was mentally withheld. His sole intention was to go through with the ceremony of marriage, not for the purpose of establishing a marriage, but only for the purpose of injuring and defrauding his victim. He never intended entering into a marriage for any of the purposes for which marriages are instituted. It was a naked ceremony without any subsequent consummation or cohabitation; but on the other hand, followed by an immediate desertion. Looking upon the case in this way, it is perhaps not impossible to conjecture the views which led Judge Totten to dissent from the majority of the Court in this case. See Bishop Mar. Div. 4 Edit. ¿ 243 *et seq.* Id. ¿ 238 *et seq.* There are several Scotch cases where marriages entered into informally and not consummated by copula, have been set aside, which were not intended by either party to operate as a marriage, but which

were intended as an imposture, or to produce some other and different effect. Taylor v. Kello, Mor. Dict. 12,687; Campbell v. Sassen, 2 Wils. S. 309; Stewart v. Menzies, 2 Robinson App. R. 547; Lockyer v. Sinclair, 8 Scotch Session Cases, n. s. 582.

But whether in Scotland this rule applies to marriages duly solemnized is said to be still an open question. 1 Bishop & Mar. Div. 4th Edit. § 241.

And see upon this question in England, Peats case, 2 Lewin, 288.

And in New York, Robertson v. Cowdry, 2 Western Law Jour. 191 1 S. W. Law Jour. 167; Jackson v. Winnie, 7 Wend. 47.

And in Vermont, Mount Holly v. Andover, 11 Vt. R. 226; Clark v. Field, 13 Vt. R. 460; Barnes v. Wyethe, 28 Vt. R. 41.

As to the general doctrine that a marriage may be avoided by fraud, see Scott v. Shufeldt, 5 Paige, 43; Perry v. Perry, 2 Paige, 501; Ferlat v. Gojon, Hopkins Ch. R. 478; Clark v. Field, 13 Vt. R. 460; Hull v. Hull, 5 Eng. L. & Eq. 539; S. C. 15 Jur. 710; Respublica v. Hevice, 3 Wheeler Crim. Cas. 505; Dalrymple v. Dalrymple, 2 Haggard Con. R. 54, 104; S. C., 4 Eng. Ec. R. 485; Keys v. Keys, 2 Fost. N. H. R. 553; Robertson v. Cole, 12 Texas, 356; Sloan v. Kane, 10 How. N. Y. Prac. Cas. 66; Burtis v. Burtis, Hopkins Ch. R. 557; Jolly v. McGregor, 3 Wilson & Shaw, 85; Countess of Portsmouth v. Earl of Portsmouth, 1 Haggard Ec. R. 355; S. C. 3 Eng. Ec. R. 154; Harford v. Mooris, 2 Haggard Con. R. 423; S. C. 4 Eng. Ec. 575; 2 Kent Com. 76, side page; 1 Bla. Com 439. (24).

And see True v. Ranney, 1 Fost. N. H. Rep. 52; Sullivan v. Sullivan, 2 Haggard Con. Rep. 238, 246.