## SICKLES vs. CARSON.

1. A single man, in lawful arrest under a *bona fide* regular proceeding in bastardy, on the examination of a single woman, who chooses to marry her as a means of avoiding the legitimate consequences of the proceeding, will not be permitted to relieve himself of the obligations which he thus assumes, on the ground that, at the time of the marriage, he was under duress, by virtue of the arrest.

2. In a suit to annul the contract of marriage, it must appear to the satisfaction of the court, that the complaint is not made by collusion, for the purpose of annulling the marriage, but, in truth and good faith, for the cause alleged in the bill.

On bill for decree annulling the marriage between the parties.

THE CHANCELLOR.

The bill is filed to annul a marriage contract between the parties, on the ground that the consent of the complainant to the marriage was obtained by coercion. The defendant is an infant, and appears by guardian *ad litem.* The marriage took place on the 12th of November, 1874, in the county of Mercer. The complainant was, at the time, under arrest on the charge of bastardy, made the day previous, by one of the overseers of the poor of the township of East Windsor, in Mercer county, in which the defendant resided. It appears from the testimony, that he was arrested in Monmouth county,

where he lived, on the 11th of November, and brought before the justice at Milford, in Mercer county, on the next day; that when he was brought before the justice, he was, at his own request, taken to the house of the defendant's father, where she lived, in order that he might have an interview with her. The justice testifies that he asked the complainant, when he was brought into his office, what he was going to do about the matter, and the complainant said he " wanted to go and see the girl, and talk with her." He adds, that the complainant and the constable then went to the defendant's house. The result of the interview which the complainant sought, appears to have been the marriage, which was solemnized at the house, not by the justice, but by a minister of the gospel, who was sent for for the purpose. The complainant does not deny that the defendant was then pregnant by him. Nor is there evidence of any coercion, unless the fact that he was under arrest be so considered. The proceedings appear to have been entirely regular. Indeed, they are not impugned in any way whatever. The complainant says of the marriage ceremony: " I did not go through this ceremony of my own free will. I did it under compulsion. I did not want to marry this girl, because she did not bear a very good reputation where she had been. I was, at that time, engaged to another girl. After this ceremony I came right home, and have never lived with this woman." He staid in Milford until the next day, it appears, however, for the justice says the complainant called on him the next morning. Though the complainant says he has not lived with the defendant, he does not say he has not cohabited with her since the marriage. He was twenty-five years old, was under arrest on a charge, the truth of which he did not and does not deny, and went of his own accord to the defendant, at the house of her father, and was there married to her. For aught that appears, he may himself have proposed the marriage. Being in arrest, in a proceeding having for its lawful purpose the indemnity of the township against the support of

a bastard child, begotten by him, he appears to have chosen to avoid the consequences, by becoming the husband of the girl, who was about to become the mother of his child. If a single man, who is in lawful arrest under a *bona fide* regular proceeding in bastardy, on the examination of a single woman, chooses, as a means of avoiding the legitimate consequences of the proceeding, to marry her, surely he cannot be permitted to relieve himself of the obligations which he thus assumes, merely on the ground that he, at the time of the marriage, was under such arrest. The arrest is not of itself enough, in such a case, to constitute duress of imprisonment. The circumstances of this case are not such as to warrant a decree annulling the marriage. 1 *Bishop on Marr. and Div.,* § 212; *Jackson* v. *Winne,* 7 *Wend.* 47; *Scott* v. *Shufeldt,* 5 *Paige* 43.

The bill is not accompanied by the affidavit against collusion, required by the statute in cases of divorce; nor is there any evidence that the application is not collusive. Though the bill is not filed for divorce, and is not within the statute, yet, in view of the nature of the contract and the character of the relief sought, there is abundant reason for requiring, in such cases, that it should appear to the satisfaction of the court that the proceeding is not the result of collusion. All the reasons for requiring evidence of *bona fides* in the application, and guarding the court against imposition in suits for divorce, apply equally to actions to annul the contract of marriage. In all such cases it must appear to the satisfaction of the court, that the complaint is not made by collusion, for the purpose of annulling the marriage, but, in truth and good faith, for the cause alleged in the bill. The bill is dismissed.