**In re William I. MOORE and Patty A. Moore, dba Busy Bee Cleaning, Debtors.**

**Bankruptcy No. 93–00858.**

United States Bankruptcy Court, D. Idaho.

Oct. 26, 1995.

Harold Q. Noack, Jr., Boise, Idaho, for debtors.

Richard J. Hayden, Coeur d'Alene, Idaho, for Ford Motor Credit Company.

Terry L. Myers, Givens Pursley & Huntley, Boise, Idaho, for Trustee.

Gary L. McClendon, Staff Attorney, Office of the U.S. Trustee, Boise, Idaho.

John H. Krommenhoek, Trustee.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

Motions pending are: the Debtors' motion to modify their Chapter 13 Plan; the Trustee's motion to modify the Chapter 13 plan; Ford Motor Credit Company's ("FMCC") motion to dismiss; the Trustee's attorney's application for payment of attorney's fees; and the Debtors' attorney's application for payment of attorney's fees.

This case is an example of what can go wrong in a Chapter 13 case after the debtor's plan has been confirmed. After the Debtors' plan was confirmed on July 28, 1993, William and Patty Moore (the "Debtors") were divorced, Mrs. Moore totally wrecked her Ford Explorer 4–Wheel Drive Vehicle (the "Ford Explorer"), and she contracted an incurable disease and is presently unable to work.

## BACKGROUND

The current round of post confirmation difficulties was brought to the attention of the Chapter 13 Trustee when Mrs. Moore reported to him that her Ford Explorer had been wrecked. A three–way battle over the insurance proceeds, between the Debtors, the Trustee, and Ford Motor Credit Company resulted. FMCC held a secured interest in the wrecked Ford Explorer. FMCC contended it was entitled to all of the insurance proceeds in payment for its secured claim. The Trustee contended FMCC was entitled only to the balance of its secured claim as provided by the plan, and the Debtors were only entitled to their statutory automobile exemption of $1,500.00. The Trustee also argued that the remainder of the proceeds were disposable income and should be distributed to the general unsecured creditors. The Debtors contended FMCC was entitled to the balance of its secured claim as provided by the plan and the remainder of the proceeds belonged to them.

The Debtors' brought the issue to a head by filing a motion for turnover of funds. In resolving the Debtors' motion for turnover of funds, it was held FMCC's claim to the insurance proceeds was limited to the allowed amount of its secured claim in the vehicle according to the Debtors' Chapter 13 plan. Ford Motor Credit Company was thus paid $11,917.58 of the insurance proceeds leaving a balance of $10,622.42. The Debtors also were entitled to $1,500.00 of this amount as a statutory exemption. Lastly, the Debtors were found to be entitled to the remainder of the insurance proceeds absent confirmation of a modification of the plan. *See In re Moore*, 181 B.R. 522 (Bankr.D.Idaho 1995).

Absent a motion to modify the plan, however, I declined to determine whether the remainder of the funds were disposable income.[1] The Trustee was allowed to retain the remainder of the insurance proceeds pending determination of motions to modify. *Id.*

Following this decision, both the Debtors and the Trustee filed competing motions to

---

1. A modification to a confirmed chapter 13 plan must occur before a debtor can be required to dispose of additional disposable income.

*Anderson v. Satterlee (In re Anderson),* 21 F.3d 355· (9th Cir.1994).

modify the plan. The Debtors' now propose to modify the plan to allow a $9,768.00 lump sum prepayment of the existing plan. Thereafter, they propose to make monthly payments of $300.00 until such time as the original amount to be paid into the plan is paid off. The Debtors contend their motion to modify is reasonable because they have suffered a substantial decrease in income since the filing of their Chapter 13 petition.

In contrast, the Trustee's motion to amend presumes that the insurance proceeds from the Ford Explorer are disposable income. He proposes that the $8,900.00 of the insurance proceeds be contributed to the plan. He also suggests that the Debtors' payments to the plan be reduced by $379.99 (the amount previously distributed to per month to FMCC in payment for the Ford Explorer) leaving a $301.00 per month payment.

At the hearing on the motions to modify the plan, the Trustee questioned the accuracy of the Debtors' amended schedules and requested that the Debtors file their 1994 tax returns. The Court ordered the Debtors to file copies of their 1994 income tax returns and took the motions to modify under advisement pending the Debtors' submission of their income tax returns.

The Debtors' 1994 tax returns revealed that the Debtors had sold off the standing timber on their 4.27 acre parcel of real property and have realized in excess of $17,300.00 cash from the sale. The Debtors had not previously disclosed the timber sale to the Chapter 13 Trustee. The Debtors have already spent the $17,300.00.

The Debtors' tax returns also revealed that the Debtors' gross income dropped just $216.00 from 1993 to 1994.

Following the filing of the Debtors' tax returns, FMCC filed a motion to dismiss for failure to report the timber in the Debtors' schedules and failure to disclose the timber sale. FMCC contends that the $10,622.42 insurance proceeds and the proceeds from the timber sale are income. FMCC contends both amounts should be paid into the plan

and that baring such payment, the case should be dismissed for failure to disclose the timber, and or, inability to complete the plan.

The Trustee has joined in FMCC's motion to dismiss. The Trustee contends that the case should be dismissed because of the Debtors' failure to promptly file copies of their income tax returns with the Trustee. The Trustee notes that he had previously had to file a motion to dismiss in order to get the Debtors to file copies of their 1993 income tax returns. Also based on the 1994 and 1993 income tax returns, the Trustee contends the Debtors' amended schedules are inaccurate because the Debtors' tax returns do not show a decline in income. Not including the $14,436.00 in capital gains resulting from the Debtors' sale of timber, the Debtors' 1994 tax return shows a gross income of $23,726.00 or $1,977.16 per month. The Debtors 1993 tax return shows a gross income of $24,017.00 or $2,001.41 per month.[2]

To further complicate the issues, the Debtors attorney, Mr. Noack has filed an application for attorney's fees in the amount of $4,974.84. The Trustee's counsel, Mr. Myers, has also filed an application for attorney's fees in the amount of $5,366.20.

## DISCUSSION

 Generally, the modification of a confirmed chapter 13 plan requires a change in circumstance. The destruction of Mrs. Moore's sole means of transportation is a significant change in circumstances which justifies a modification to the plan. The Debtors' decline in income would also justify a modification of the plan. *In re Moore, supra.*

A. The Debtors' Motion to Modify Their Plan.

 According to the Debtors' amended schedules, Mr. Moore currently grosses $2,916.00 per month. From this figure, $728.00 per month is deducted for payroll taxes, social security and medical insurance.

---

2. The Debtors' gross income in both 1994 and 1993 is **less** then Debtors' **net** scheduled income for either 1994 or 1993. If, the Debtors' income were actually as low as stated in their income tax returns, the Debtors would be unable to make any plan payments. However, this discrepancy is probably the result of the Mr. Moore's pre-tax deduction of the his 401K payments.

In addition, Mr. Moore has elected to deduct $300.00 per month in 401K loan repayments and $233.00 per month in 401K contributions. However, 401K contributions and 401K loan repayments are not necessary expenses.[3] Therefore, Mr. Moore's scheduled net monthly income is $2,178.00 ($2,916.00—$738.00).

Also according to the Debtors' schedules, after payroll and medical deductions, Mrs. Moore makes a net income of $567.00 per month. Accordingly, the Moores' net monthly income is $2,745.00. The Debtors' average monthly expenses are $2,357.00. Thus, the Debtors claim they have only $388.00 in disposable income per month.

The Debtors' motion to modify will be denied. First, the Debtors have not shown a significant loss of income in comparison with their tax filings. Second, they have failed to take into account the use of the funds received through the sale of an asset, the timber, to allow them to continue to fund their plan even had there been a significant decline in income.

The Debtors were no doubt influenced in the form of their modification to substitute the use of the insurance proceeds for income dedicated to the plan funding. The Debtors used the proceeds of the timber sales to the detriment of making plan payments based on their original plan is suggestive of bad faith.

Further, the Debtors' motion to modify the plan is not feasible. The Debtors propose to make a lump sum prepayment of $9,768.00 on the existing plan and use the remainder of the insurance proceeds (a little less then $2,000.00) to make a down payment on another automobile for Mrs. Moore. The Debtors would then make monthly payments of $301.00 until such time as the original amount due under the plan has been satisfied.

However, the Debtors contend they must have a replacement four wheel drive vehicle. The Debtors' disposable income is at best $388.00. The Debtors' modification leaves the Debtors with no more monthly surplus with which to purchase a vehicle then the Trustee's modification.

## B. The Trustee's Amended Plan.

The Trustee's modification presumes that the insurance proceeds received on the Ford Explorer are income.[4]

"Disposable income" is defined as:

income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).

"Income" is not defined by the Code. Some courts have adopted the Internal Revenue Code's definition of income.[5] Under this approach, none of the insurance proceeds would be income, and only the capital gains realized on the timber proceeds ($14,436.00) would be income. However, the majority of courts have rejected this approach because it leads to anomalous results, *i.e.* non-taxable social security payments and inheritance are not income.[6]

---

3. *In re Moore*, 181 B.R. 522 (Bankr.D.Idaho 1995).

4. In a supplemental statement filed after receipt of the Debtors' tax returns, the Trustee also contends that the proceeds from the November 1994 sale of timber is disposable income.

5. *In re Fleshman*, 123 B.R. 842, 846 n. 1 (Bankr. W.D.Mo.1990) (inheritance is not disposable income under Chapter 12); *In re Stones*, 157 B.R. 669, 670 (Bankr.S.D.Cal.1993) (bona fide loan is not income under § 1225(b)).

6. *In re Hagel*, 184 B.R. 793, 797 (9th Cir BAP 1995) (Social Security disability benefits are income under § 1325(b)); *In re Gage*, 159 B.R. 272, 280 (Bankr.D.S.D.1993); *In re Martin*, 130 B.R. 951, 966 (Bankr.N.D.Iowa 1991) (Chapter 12 case); *In re Wood*, 122 B.R. 107, 117 (Bankr.Idaho 1990) (Chapter 12); *In re Tomasso*, 98 B.R. 513, 516 (Bankr.S.D.Cal.1989) (non-exempt damages from personal injury suit are income under Chapter 13 even though non-taxable); *In re Kloberdanz*, 83 B.R. 767, 772 n. 19 (Bankr.D.Colo.1988) (non-taxable social security payments are income under Chapter 12); *In re Euerle*, 70 B.R. 72, 73 (Bankr.D.N.H.1987) (Chapter 13 plan modified to include inheritance).

I am not aware of any decision adopting a comprehensive definition of "income". Instead the courts have adopted a piece meal approach. At least one court has held that automobile insurance proceeds are income. *In re Boothe*, 167 B.R. 943, 945 (Bankr. D.Colo.1994), denied confirmation of a modified plan on the ground the plan did not take the additional disposable income generated by the insurance proceeds into account. However, the court did not explain its rational for this conclusion.

I disagree with *In re Boothe*. Under *Boothe*, any cash received during the pendency of the plan would be considered income. I believe this would undercut the rational of Chapter 13. If a debtor meets all the requirements of sections 1325(a) and (b), the debtor may keep all prepetition assets (whether exempt or nonexempt).[7]

The Code has two requirements concerning unsecured creditors. First, the debtor must pay the unsecured creditors at least as much as they would have received had the debtors' estate been liquidated on the effective date of the plan. 11 U.S.C. § 1325(a)(4). This requirement is commonly known as the "best interest of the creditors test". The second requirement is that if an unsecured creditor objects to confirmation of the plan, the debtor must either pay all claims in full or contribute all projected disposable income to the plan. This requirement is commonly known as the "best efforts test."

However, this second requirement should be interpreted in light of the best interests of the creditors test. The best interests of the creditors test essentially requires the debtor to pay for his non-exempt assets over the term of the plan. Because the assets are valued as of the effective date of the plan, post confirmation appreciation of the assets does not increase the debtor's burden under § 1325. *See In re Moore, supra.* Thus, a chapter 13 debtor receives the benefit of appreciation of any loss engendered by the decline in value of his pre-confirmation assets.

The debtor's duty with regard to secured creditors is similar; *i.e.*, he must pay the secured creditor the value of his secured claim (the value of the collateral) together with interest over the term of the plan. 11 U.S.C. § 1325(a)(5). Thus, the Code essentially requires the debtor to purchase those assets he has pledged as collateral from the secured claim holders and to purchase the remaining unencumbered assets from the unsecured creditors. The benefit of appreciation and the risk of loss thus belong to the debtors.

■ I would include within the definition of income for this purpose assets (monetary or otherwise) received by the debtor which are not attributable to the appreciation, sale or conversion of the debtor's pre-confirmation assets.[8]

At the time the Debtors' plan was confirmed the Debtors had no equity in the Ford Explorer. Had the Debtors' estate been liquidated on its effective date, the unsecured creditors would not have received anything due to the sale of the Ford Explorer. FMCC has received its entire secured claim from the insurance proceeds. Thus, in effect the Debtors have already paid for the Ford Explorer.

Essentially the payment of insurance proceeds for the Ford Explorer was no more than the conversion of the Debtors' property from one form to another. Had the Debtors simply traded the Ford Explorer for a similar vehicle, the Trustee would not be contending that the new vehicle was income. The fact that in this case the vehicle was forcibly converted into cash does not change this result. The mere conversion of the debtors' pre-conversion assets from one form to another (even cash) does not produce income.[9]

---

7. *See* John Ventura and Ellen Stone, *Post–Confirmation Disposable Income: What Isn't,* NACTT Quarterly, October, 1995, Vol. 8, No. 1, at 28.

8. However, a debtor who intends to celebrate the confirmation of his plan by holding a garage sale or who intentionally under values his assets might very well run a afoul of the good faith requirement of 11 U.S.C. § 1325(a)(3).

9. For this reason, the sale of the Debtors' timber also did not result in income.

Second, the Debtors will need some alternative form of transportation. The Trustee suggests this could be remedied by allowing the Debtors to utilize their $1,500.00 automobile exemption as a down payment on a new car. However, this suggestion is impracticable as under the Trustee's plan the Debtors would have only $88.00 per month, or less, in excess income with which to make auto payments.

For the foregoing reasons, the Trustee's motion to modify will be denied, and the Trustee shall return the remainder of the insurance proceeds to the Debtors.

## C. Attorney's Fees.

Both the Trustee's attorney, Mr. Myers and the Debtors' attorney, Mr. Noack, have filed applications for attorney's fees. The Trustee and the Debtors have filed cross objections to the allowance of attorney's fees.

Ordinarily, it is not necessary for a Chapter 13 Trustee to retain counsel. However, the issues involved in this particular circumstance were both unusual and complex enough to justify the need for an attorney. Nevertheless, Debtors contend that the Trustees' attorney's fees should not be allowed because the Trustee did not have a right to retain the insurance proceeds and the Debtors do not have a continuing duty to return excess income to the Trustee. However, there is local authority supporting the Trustee's position that a chapter 13 debtor has a continuing duty to turnover additional disposable income to the Trustee. *In re Wages*, 92 I.B.C.R. 75, 78 (Bankr.Idaho 1992) ("It is not inconsistent with the Code to place a continuing responsibility on the Debtor to deliver excess income to the Trustee as opposed to demanding that the Trustee discover that income and effect its payment into the plan") overruled in part by *In re Anderson*, 21 F.3d 355 (9th Cir.1994) (holding that Debtors need only pay all of their projected disposable income not their actual

disposable income to meet the best efforts test).[10] As to the issue of whether the insurance proceeds are income, the only case on point supports the Trustee's contention that the insurance proceeds are income. *See In re Boothe, supra.* Under these circumstances, the expenditure of less than half of the amount the Trustee was attempting to recover on attorney's fees was not unreasonable. Further, the Debtors' failure to timely file their 1994 income tax returns caused a considerable increase in the time required to determine the matter.

The Court has reviewed Mr. Myers' application and determined that the fees requested are necessary and reasonable. Accordingly, Mr. Myers' application for attorney's fees is approved.[11]

The Court has reviewed Mr. Noack's application and finds that under the circumstances, the fees requested are reasonable. Accordingly, Mr. Noack's application is granted.

However, neither the Debtors, the Trustee, Mr. Myers, or Mr. Noack has filed a motion to include the additional attorney's fees in the plan nor would it appear that such would be feasible, practicable or possible.

## D. FMCC's Motion to Dismiss.

Code section 1307(c) provides for dismissal or conversion of chapter 13 cases for cause. 11 U.S.C. § 1307(c) provides:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

. . . .

---

**10.** Because only a substantial change in circumstances justifies the modification of a plan, a Chapter 13 debtor may not be required to turn over all of his actual disposable income to the Trustee.

**11.** Although the fees for the trustee's attorney are not payable from the chapter 13 estate, the insurance proceeds, or through the debtors' plan, payment may be obtainable under the provisions of 28 U.S.C. § 586(e)(2)(B)(ii).

678

(3) failure to file a plan timely under section 1321 of this title;

. . . .

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title. . . .

11 U.S.C. § 1307(c).

Here, the Debtors have submitted evidence showing that they are unable to complete the present plan and the Court has denied confirmation of two modifications of the present plan. However, confirmation of the Debtors' plan has not been revoked under § 1330 and the Debtors have not actually defaulted on their plan. Accordingly, the case may not be dismissed pursuant to § 1307(c)(5) or (7).

A Chapter 13 petition filed in bad faith may be dismissed "for cause" pursuant to 11 U.S.C. § 1307(c). *In re Powers*, 135 B.R. 980, 991 (Bankr.C.D.Cal.1991); *In re Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *In re Gier*, 986 F.2d 1326, 1329 (10th Cir. 1993). To determine if a petition has been filed in bad faith courts are guided by the standards used to evaluate whether a plan has been proposed in bad faith. 11 U.S.C. § 1325(a)(3); *Powers*, 135 B.R. at 994; *Gier*, 986 F.2d at 1329.

. . . .

To determine bad faith a bankruptcy judge must review the "totality of the circumstances." *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir.1982). A judge should ask whether the debtor "misrepresented the facts in his [petition or] plan, unfairly manipulated the Bankruptcy Code, or otherwise [filed] his Chapter 13 [petition or] plan in an inequitable manner." *Id.* at 1390. "A debtor's history of filings and dismissals is relevant." *In re Nash*, 765 F.2d 1410, 1415 (9th Cir.1985). Bad faith exists where the debtor only intended to defeat state court litigation. *In re Chinichian*, 784 F.2d 1440, 1445–46 (9th Cir.1986). *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1993).[12]

The Trustee and FMCC contend that the Debtors' petition was not filed in good faith because of the Debtors' alleged failure to include the timber in their schedules and the Debtors' failure to disclose the timber sale to the Trustee. The Trustee also contends the Debtors' failure to promptly provide the Trustee with copies of their tax returns is indicative of bad faith.

The Debtors testified they are not in the timber sale business and that the value of their residence as set forth in their schedules included the timber. Further, they claim at the time the petition was filed and the plan was confirmed they did not intend to sell the timber and had no idea the timber could be sold for so much money. They further claim the price of pine has increased dramatically in the last couple of years and that even the company that cut the timber estimated it would only bring about $5,000.00.

The Debtors further state they sought the advice of their attorney before they sold the timber and he advised them the timber was theirs to sell. The Debtors denied they had

12. Other factors to be considered by the courts include:
1) The amount of the proposed payments and the amounts of the debtor's surplus;
2) The debtor's employment history, ability to earn, and likelihood of future increases in income;
3) The probable or expected duration of the plan;
4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;
5) The extent of preferential treatment between classes of creditors;
6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;
8) The existence of special circumstances such as inordinate medical expenses;
9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
10) The motivation and sincerity of the debtor in seeking Chapter 13 relief;
11) The burden which the plan's administration would place upon the trustee.
*Fidelity & Casualty Company of New York v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988) *quoting, In re Brock*, 47 B.R. 167, 169 (Bankr.S.D.Cal.1985) (*quoting, In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)).

delayed filing copies of their 1994 tax returns for the purpose of hiding the timber sale.

With regard to their disposable income, the Debtors claim their decline in income did not occur until 1995 and that the Debtors are now making even less then the amount shown on their amended schedules. In addition, some of the business income shown on the Debtors' 1994 income tax return was supposedly earned by the Debtors' daughter. Lastly, Mr. Moore testified that he has had a wage decrease since the Moores filed their amended schedules. The Debtors creditability, however, throughout this entire proceeding has been suspect.

This record indicates sufficient evidence of lack of good faith upon which to grant FMCC's motion to dismiss. However, under the totality of circumstances test of *In re Goeb, supra,* I decline to do so on the assumption the Debtors can continue to fund their chapter 13 plan as originally confirmed, and that they ought to be given the opportunity to do so regardless of their post-confirmation transgressions. The motion to dismiss will thus be denied.

### CONCLUSION

Since it has been determined the remaining funds representing insurance proceeds are not disposable income, the funds will be turned over to the Debtors. Both applications for attorney's fees are approved, but no order can be issued directing payment of either application from a particular source. The motions to modify and the motion to dismiss will be denied. A separate order will be issued.