**In re James T. KERR and Marcia A. Kerr, Debtors.**

**Bankruptcy No. 94 B 50675.**

United States Bankruptcy Court, N.D. Illinois, Western Division.

April 22, 1996.

Lydia S. Meyer, Trustee, Loves Park, Il.

Jeffry A. Dahlberg, Loves Park, Il, for Debtors.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter came before the Court for oral arguments on March 28, 1996, on the Motion of the Chapter 13 Trustee ("Trustee"), Lydia S. Meyer, to Modify Chapter 13 Plan. Prior to oral arguments the parties submitted briefs, specifically a Memorandum in Support of Trustee's Motion to Modify Chapter 13 Plan, and a Memorandum in Opposition to Trustee's Motion to Modify Chapter 13 Plan. The Debtors, James T. and Marcia A. Kerr, are represented by Attorney Jeffry A. Dahlberg. The Trustee represents herself.

## BACKGROUND

The facts of this case are not disputed and are summarized as follows.

The Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code ("Code") on April 8, 1994. Their schedules list real property commonly known as 1644

Ferncliff Boulevard, Rockford, Illinois. The value of the real property was stated as $80,000.00 and the amount of the secured claim on the real property was listed as $64,000.00. The Debtors also claimed a $15,-000.00 homestead exemption in the real property.

On October 27, 1995, the Debtors sold the real property for $70,000.00. The net proceeds from the sale are $2,654.07 and are being held by the closing agent. Prior to the sale, the Debtors resided at the real property and there is no dispute that it was the Debtors' homestead. No objection was raised to the Debtors' claimed exemption. Moreover, it is agreed that the proceeds from the sale of exempt real estate retain the same exempt character.

The Debtors' confirmed Amended Chapter 13 Plan calls for weekly payments of $35.00 and a 10% distribution to unsecured creditors.

## ISSUE

The issue is whether the proceeds from the Debtors' sale of exempt real estate are includable in the disposable income calculation under Section 1325(b)(2).

This issue is one of first impression for the Court. As counsel and the Trustee noted, issues that have a bearing on the Court's decision have materialized in earlier decisions of this Court. In *In re Laye*, 91 B 32230, (unpublished decision) (Bankr.N.D.Ill.W.D. 1994), this Court found that principles of res judicata did not prevent modification of a plan and that a change of circumstances was unnecessary for postconfirmation modification. *See also Matter of Witkowski*, 16 F.3d 739, 746 (7th Cir.1994). While adopting the same rationale in *In re Patterson*, 93 B 50741 (unpublished decision) (Bankr.N.D.Ill.W.D. 1995),[1] the Court found that disposable income can be revisited upon postconfirmation modification. *Patterson*, 93 B 50741 at 13–

17. This Court also found that a reexamination of a debtor's expenses complements the reevaluation of disposable income with a postconfirmation modification. *Id.* at 22–23.

## DISCUSSION

■ The analysis begins with a review of the reach of disposable income found in Section 1325(b)(2). Section 1325(b)(2) defines disposable income:

> For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor; and
>
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2).

Section 1325(b) came into existence with the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAF-JA"), Pub.L. No. 98–353, 98 Stat. 333 (1984). The disposable income test was created, in part, to assuage the concerns of the consumer credit industry. The consumer credit industry felt that the addition of Section 1325(b) "would force debtors in a Chapter 13 reorganization to commit more than a nominal amount of their income to the plan."[2] James Rodenberg, *Reasonably Necessary Expenses or Life of Riley?: The Disposable Income Test and a Chapter 13 Debtor's Lifestyle*, 56 Mo.L.Rev. 617, 628 (1991); *see also* Mindy L. Silver, *The Disposable Income Test: An Attempt Toward Uniformity*, 4 Bankr.Dev.J. 221 (1987) (for a discussion of the legislative history surrounding Section 1325(b)(2)).

\*    \*    \*    \*    \*    \*

**1.** *In re Thompson*, 92 B 50244, dealt with the identical issues and therefore was consolidated with *Patterson*.

**2.** Congress noted that the disposable income test, which is also known as the "ability to pay" test, "should serve as the standard for determining

whether the debtor is reasonably capable of *paying more* than originally proposed." Rodenberg, *supra* (quoting *Personal Bankruptcy: Oversight Hearings Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary*, 97th Cong., 1st and 2d Sess. 213 (1981–82)).

A rash of cases has addressed the question of whether exempt proceeds are considered disposable income. The most renowned, often cited case originates from the Bankruptcy Court for the Northern District of Illinois.

In *In re Schnabel*, 153 B.R. 809 (Bankr. N.D.Ill.1993), the debtor's income was derived solely from social security and pension benefits that amounted to $3,247.00 per month.[3] *Id.* at 812. The debtor's proposed Chapter 13 plan sought to devote $714.00 per month for a portion of the 36–month duration and then $939.00 per month thereafter. This calculation would provide the unsecured creditors with a 39% dividend. The Chapter 13 trustee and an unsecured creditor objected to the debtor's plan in part because it allegedly did not comply with the disposable income requirement. The basis of the objection was that the debtor failed to include exempt income in the disposable income calculation. The debtor contended that since all of his income is exempt it only represents disposable income to the extent he voluntarily contributes it to the plan. *Id.* at 813.

The court found that although social security and pension benefits are exempt under Illinois law, they are to be included in the disposable income calculation for purposes of Section 1325(b)(2). *Id.* at 817. In reaching this conclusion, the *Schnabel* court focused on the language and purpose of Section 1325(b)(2) and the purpose of exemptions.

■ The court reasoned that Section 1325(b)(2) contains no express limitation on the word "income." When a statute is clear, the debtor bears an "exceptionally heavy burden of persuading the Court that Congress intended" a limitation or restriction. *Schnabel*, 153 B.R. at 815 (citing *Patterson v. Shumate*, 504 U.S. 753, 760, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992)). Thus, the court found that the debtor's social security and pension payments "to the extent not reasonably necessary for support," must be used in the plan. *Id.* at 816.

The *Schnabel* court also looked to the Seventh Circuit's interpretation of a parallel provision, Section 522(d)(10)(E).[4] In *Matter of Kochell*, 732 F.2d 564 (7th Cir.1984), the Seventh Circuit held that some of the funds in a debtor's pension plan were not reasonably necessary for support and therefore not exempt under Section 522(d)(10)(E).[5] *Schnabel* noted that statutory terms carry the same meaning unless a contrary purpose is revealed and both Section 1325(b)(2) and Section 522(d)(10)(E) focus on what assets are reasonable and necessary for maintenance. *Schnabel* at 816.

The *Schnabel* court summarily disregarded the applicable Illinois exemption provisions that did not contain similar language. "While Illinois' opt-out provision may preclude the substantive application of § 522(d)(10)(E) to the present proceedings, the application of its literal interpretation to a parallel provision [1325(b)(2) ] in the same statute is sound statutory construction." *Id.*[6]

---

**3.** The debtor received monthly pension payments in the amount of $2,504.00 and monthly social security payments in the amount of $743.00.

**4.** Section 522(d)(10)(E) of the Code provides, in pertinent part, an exemption in bankruptcy for:

(10) The debtor's right to receive—
(A) a social security benefit, unemployment compensation, or a local public assistance benefit;

. . . . .

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illinois, disability, death, age, or length of service, *to the extent reasonably necessary for the support of the debtor and any dependent of the debtor* [.]
11 U.S.C. § 522(d)(10)(E) (emphasis added).

**5.** The Seventh Circuit's review of the legislative history revealed that:

the federal exemptions are derived in large part from the Uniform Exemptions Act.... Section 6 of the Uniform Exemptions Act defined the phrase "property to the extent reasonably necessary for the support of [the debtor] and his dependents" as "property required to meet the present and anticipated needs of the individual and his dependents as determined ... after consideration of the individual's responsibilities and all of the present and anticipated property and income of the individual, *including that which is exempt.*"
*Kochell*, 732 F.2d at 565.

**6.** Arguably, the *Schnabel* case does not deal with exempt property because a pension is exempt, under the court's reasoning, *only to the extent necessary to support the debtor.* Therefore, the portion of the pension which is not necessary for support *is not exempt* and must be part of disposable income.

The *Schnabel* court acknowledged that exemptions apply in both Chapter 7 and Chapter 13, but found the purposes to be different.

> Legislative history indicates that in a liquidation exemptions are meant to "protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge".... A Chapter 13 debtor, on the other hand, may keep all its assets, exempt or not, in return for repayment of creditors out of future income.

*Schnabel* at 817 (citations omitted).

■ To permit a Chapter 13 debtor to obtain a super discharge without being required to pay the creditors as much as possible contravenes the purpose underlying Chapter 13. *Id.; see also In re Solomon*, 67 F.3d 1128, 1135 n. 1 (4th Cir.1995) (Michael, Circuit J., dissenting).

\* \* \* \* \* \*

The reasoning in *Schnabel* has been applied by several other courts holding that exempt assets are included in calculating disposable income. *See Watters v. McRoberts*, 167 B.R. 146, 147 (S.D.Ill.1994) (personal injury recovery); *In re Minor*, 177 B.R. 576, 583 (Bankr.Tenn.1995) (lump-sum worker's compensation settlement award) [7]; *In re Jackson*, 173 B.R. 168, 171 (Bankr.E.D.Mo. 1994) (worker's compensation settlement); *In re Hagel*, 171 B.R. 686, 689 (Bankr. D.Mont.1994) (social security disability benefits); *In re Rogers*, 168 B.R. 806, 807 (Bankr. M.D.Ga.1993) (naval retirement benefits); *In re Morse*, 164 B.R. 651, 655 (Bankr. E.D.Wash.1994) (social security and military pension).[8] *But see Solomon*, 67 F.3d at 1132 (funds within exempt IRAs not included in disposable income); *In re Berger*, 61 F.3d 624, 627 (8th Cir.1995) (finding in chapter 12 case exempt life insurance proceeds are not part of disposable income); *In re Koch*, 187 B.R. 664, 668 (D.S.Dakota 1995) (exempt workers' compensation benefits not included in disposable income calculation); *In re Tomasso*, 98 B.R. 513, 515 (Bankr.S.D.Cal.1989) (personal injury settlement not part of disposable income).

The main thrust of the Trustee's argument rests on the analysis provided in *Schnabel.*

\* \* \* \* \* \*

The Debtors argue that *Schnabel* ignores the impact of Section 522(c), which by way of Section 103(a) [9] provides an express limitation to Section 1325(b)(2). The majority of cases citing *Schnabel* with approval do not address this argument.[10]

> Section 522(c) states in pertinent part:
>
> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case[.]

11 U.S.C. § 522(c).

■ A general principle of bankruptcy law is that upon the filing of a case in bankruptcy all of the debtor's property becomes property of the estate. *See* 11 U.S.C. § 541(a)(1), (a)(2). This includes property that a debtor intends to claim as exempt.

---

This concept of course should not be applicable under Illinois law where no such limitation is placed on the exemption for pensions or social security payments. *See* 735 ILCS 5/12–1006 (pensions); 735 ILCS 5/12–1001 (social security).

**7.** The *Minor* case expressly overruled the decision in *In re Red*, 60 B.R. 113 (Bankr.E.D.Tenn. 1986), to the extent that the "decision may be construed as authority for the proposition that exempt income should be excluded from disposable income regardless of whether the time limitations of § 1325(b)(1)(B) or the provisions of § 1325(b)(2) apply." *Minor*, 177 B.R. at 581.

**8.** Cases such as *Morse*, *Rogers*, and *Koch* are addressing dismissal for substantial abuse under Section 707(b). Part of the analysis in a 707(b) determination is whether the debtor has the ability to repay the debt out of future disposable income. Thus, bringing Section 1325(b)(2) into the analysis. *Rogers*, 168 B.R. at 809.

**9.** Section 103(a) states that "[e]xcept as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title." 11 U.S.C. § 103(a).

**10.** The court in *Minor* without analysis breezes by the debtors' argument regarding Section 522(c). *Minor*, 177 B.R. at 582.

**374**

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 641, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992). Thereafter, if the debtor properly claims property as exempt and no objections to the exemption are sustained, the property is deemed exempt and is no longer part of the estate. *In re Reed*, 184 B.R. 733, 738 (Bankr.W.D.Tex.1995).[11] This is true regardless of whether the property has been converted to another form. *Id.* at 737–38 (citations omitted). Furthermore, Section 522(c) supports this analysis, for it "essentially 'immunizes' exempt property against any liability for prepetition debts." *Id.* (citing *Owen v. Owen*, 500 U.S. 305, 307, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991)).

Thus, the clear language of Section 522(c) protects exempt property, regardless of form, from prepetition debts. The Court cannot ignore this express limitation for purposes of defining disposable income under Section 1325(b)(2). To include exempt property within the confines of Section 1325(b)(2) directly conflicts with Section 522(c).

The Trustee contends that Section 522(c) is not addressed in any of the pertinent cases. Furthermore, the Trustee asserts that Section 522(c) may distinguish between real property which was exempt and the proceeds from the sale of the property. The Court is not persuaded by these arguments.

The simplest resolution would be to close the book here, by concluding that proceeds derived from the sale of a claimed homestead exemption are not liable for pre-petition debts.[12] Although the Court embraces this notion, other issues raised by the *Schnabel* court merit discussion.

\*     \*     \*     \*     \*     \*

The *Schnabel* court presents a persuasive argument for including exempt social security and pension benefits within the disposable income calculation.[13] The facts here however involve a homestead exemption. Whereas Section 1325(b)(2) and the exemption statute for pensions pursuant to Section 522(d)(10)(E) contain similar language for determining what is reasonably necessary, that is not true for the homestead exemption under either the federal or Illinois exemption statutes.[14] To read the "reasonably necessary test" into the homestead exemption statute would defy sound statutory construction and produce a flawed result.

Another distinction from the *Schnabel* case is the character of the property at issue. When the Code was enacted, Chapter 13 was intended to be available not only to the wage earner, but also to the pension and welfare recipient. *Regan v. Ross*, 691 F.2d 81, 85 (2d Cir.1982). This concept is clearly illustrated

**11.** In *Schnabel*, the court found that voluntary contributions of exempt income in effect removes its exempt status and therefore is in fact property of the estate. *Schnabel*, 153 B.R. at 813–14.

**12.** Furthermore, Section 1306 does not change the result here because the property was not acquired after the commencement of the case. *See* 11 U.S.C. § 1306.

**13.** It appears, however, that *Schnabel* placed greater significance on Section 1325(b)(2) than the specific Illinois exemptions, which do not contain similar language. *Schnabel*, 153 B.R. at 816; *see also* Note 6. By doing so, *Schnabel* essentially bootstrapped property that could be considered exempt under Illinois law, as being included within the "reasonably necessary" standard for application to Section 1325(b)(2).

**14.** Section 522(d)(1) provides a homestead exemption based on:

The debtor's aggregate interest, not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the

debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

11 U.S.C. § 522(d)(1).

The Illinois homestead exemption is found in 735 ILCS 5/12–901 and provides:

Every individual is entitled to an estate of homestead to the extent in value of $7,500 of his or her interest in a farm or lot of land and buildings thereon, a condominium, or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence. That homestead and all right in and title to that homestead is exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts. . . .

If 2 or more individuals own property that is exempt as a homestead, the value of the exemption of each individual may not exceed his or her proportionate share of $15,000 based upon percentage of ownership.

735 ILCS 5/12–901 (1992 & Supp.1996).

in *Schnabel*, where the debtor's only source of income was social security and pension payments. To exclude such payments from the disposable income calculation could easily create a barrier for certain individuals seeking relief under Chapter 13. Rarely would the homestead exemption be the debtor's source of income.

\* \* \* \* \* \*

Indisputably, in a Chapter 7 liquidation the Debtors' proceeds from the sale of their homestead are exempt and therefore unavailable to unsecured creditors. *See e.g., Solomon*, 67 F.3d at 1132 (debtor's IRAs would be exempt in a chapter 7). Likewise, the ability to claim a homestead exemption in a Chapter 13 case is not limited by the clear language of the Code. *See* 11 U.S.C. § 103(a).

The Fourth Circuit in *Solomon* noted that a debtor's choice to proceed under Chapter 13 should not invariably "entitle creditors to *more* than they would receive in Chapter 7, contrary to the mandate of the Bankruptcy Code." *Solomon*, 67 F.3d at 1133. *But see Schnabel*, 153 B.R. at 815 (the "best interests" test used to set the minimum requirements should not eviscerate the disposable income test).

To a limited degree, *Solomon's* reasoning is well-founded, for even though BAFJA created the disposable income test to protect creditors from nominal payments, Section 1325(b)(2) cannot be read in a vacuum. Rather, Section 1325(b)(2) must be reconciled with the entire Section 1325, including Section 1325(a). *See e.g.; In re Moore*, 188 B.R. 671, 676 (Bankr.D.Idaho 1995) (noting that if the debtor meets all the requirements of Section 1325(a) and (b) the debtor is entitled to keep all prepetition exempt and nonexempt assets).

Simply stated, Section 1325(a)(4), commonly known as the best interests test, requires that unsecured creditors shall receive no less in a Chapter 13 proceeding than they would in a Chapter 7 liquidation. *See* 11 U.S.C. § 1325(a)(4). As the court in *Moore* reasoned,

The best interests of creditors test essentially requires the debtor to pay for his non-exempt assets over the term of the plan. Because the assets are valued as of the effective date of the plan, postconfirmation appreciation of the assets does not increase the debtor's burden under § 1325.... Thus, a chapter 13 debtor receives the benefit of appreciation of any loss engendered by the decline in value of his pre-confirmation assets.

*Moore*, 188 B.R. at 676.

This rationale may be inapplicable in a case where the debtor specifically seeks to fund his or her plan with exempt assets, such as a pension. On the other hand, when dealing with proceeds from a homestead exemption, the reasoning is sound.

Under the circumstances here, the interests of the creditors and debtors are not compromised. *But cf. In re Morse*, 164 B.R. 651, 656 (Bankr.E.D.Wash.1994) (by limiting the debtor's ability to shelter income from exempt sources Section 1325(b) balances the interests of the creditors and the debtor). The value of the homestead having been included in the liquidation analysis, creditors should not anticipate the receipt of a portion of the debtors' proceeds received from a claimed homestead exemption. To further protect the creditors' interests the homestead exemption is limited to the maximum amount of $15,000.00 for joint debtors.

\* \* \* \* \* \*

The Court concludes that exempt proceeds from the sale of the Debtors' residence, for which they previously claimed an exemption, are not includable in disposable income to the extent of $15,000.00.

SEE ORDER.

### ORDER

In accordance with the Memorandum Opinion filed herewith, it is

ORDERED that the proceeds in the amount of $2,654.07 from the sale of exempt real estate are not includable in the disposable income calculation, and it is further

ORDERED that the Chapter 13 Trustee's Motion to Modify Chapter 13 Plan is DENIED.